**RICE GROWERS ASS'N OF CALIFORNIA v. REDERIAKTIEBOLAGET FRODE. THE FREJ.**

**No. 12074.**

United States Court of Appeals
Ninth Circuit.

June 24, 1949.

Rehearing Denied Aug. 15, 1949.

Writ of Certiorari Denied Nov. 14, 1949.

See 70 S.Ct. 159.

See, also, 171 F.2d 662.

George H. Hauerken, Hauerken & St. Clair, San Francisco, Cal., for appellant.

Clarence G. Morse, Graham & Morse, Francis L. Tetreault, San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an admiralty proceeding in limitation of liability in which the Rice Growers Association, hereinafter called Growers appeals from an interlocutory decree determining the value for limitation of appellant Frode's steamer Frej, burned while carrying Growers' 5060 tons of rice, shipped on bills of lading at San Francisco on a voyage to Havana, Cuba, via Panama.

Both parties agree that the valuation of the vessel in the fund for limitation is that at the termination of the voyage. They agree that the voyage continued until some later date after June 6, 1947, when Growers libeled the Frej for damages to the rice in excess of the Frej's value at that time.

Growers contends that the court erred in holding the voyage of the Frej terminat-

ed on June 19, 1947, when Frode gave notice of the abandonment of the voyage and refused to carry the cargo forward and in determining that her then value of $117,000 is the ship's item in the fund for limitation. It claims that the notice of abandonment is invalid for reasons later considered and that the voyage was not terminated until the rice in fact was delivered by Frode to its consignees in Havana, at which time the Frej's value is stipulated to be $275,000.

The Frej, laden at San Francisco with a full cargo of Growers' rice, cast off from her pier in San Francisco, thus beginning her voyage. Twenty minutes later a fire broke out in her engine room and spreading therefrom severely damaged the vessel. Nearly 40% of the rice was injured by fire, water and smoke.

The vessel was returned to San Francisco by salvaging vessels and the cargo discharged. The damaged cargo was sold. The remainder on pier continued in possession of the vessel under her bills of lading. Bids for her repairs were received and that of the General Engineering & Dry Dock Company for $122,638, to be completed in forty-eight days, was accepted. The Frej was taken to that yard on May 23, 1947, and the repairs begun on May 26th. Further repairs of the fire damage were found necessary. The total repairs of damage caused by the fire $167,498.99. In addition, new betterments to the ship were added in the sum of $17,349.40. The repairs and betterments proceeded and were finished by August 4, 1947.

On June 6, Growers filed in the court below a libel in personam against Frode and in rem against the Frej, claiming damages to the rice in the amount of $365,990, and that day the Frej was seized and held by the United States Marshal. This libel was greatly in excess of the then value of the injured vessel, its value on June 19, 1947, when some repairs had been made, being stipulated at $117,000. A claim for a further sum for refusal to carry the rice forward to Havana in the amount of $100,000 was added to Growers' libel on July 17, 1947.

Frode on June 6 was then in a position to file its petition for limitation of liability, but it awaited such filing until July 25, 1947. Frode elected not to treat the voyage as terminated on May 7, when the Frej was burned, but held the cargo under the bills of lading at least until June 19, 1947, when it notified Growers that it elected to abandon the voyage for carrying Growers' rice stating that it did so pursuant to bill of lading provisions. Frode thereafter continued to hold the rice under its bill of lading provision 10 to maintain the lien thereon for the salvage claim of the Shipowners & Merchants Tugboat Company, for which that company filed a libel in the court below against the rice and the vessel.

That the vessel's voyage continued at least until the notice of abandonment is conceded in Frode's brief, the summary of which states, "The value of the ship and pending freight must be fixed as of the end of the voyage. The voyage of the S.S. 'Frej' ended on June 19, 1947, when the voyage was abandoned by Frode, the shipowner and appellee herein." It is confirmed by the further statement of Frode's brief here concerning what it calls "the original voyage which began at San Francisco May 6, 1947, and terminated at San Francisco on June 19, 1947."

On July 26, 1947, the day after the petition for limitation was filed, the parties entered into an agreement for carrying the rice to Havana, it being stipulated that

"6. The carrying on of the cargo and/ or this agreement shall in no way prejudice any right or rights which either party now has and shall not affect the present status quo of the purported abandonment of the voyage at San Francisco, California.

"7. Cargo has now furnished full general average security and the Frej and her owners will not require further general average security."

Growers waived its amendment to its libel for $100,000 for refusal to carry the rice forward and agreed to pay $10,000 as consideration for this contract. It is further stipulated that "12. Pursuant to said agreement and between August 4 and

August 8, 1947, the said 3232 tons of rice formerly loaded in Holds No. 1, 2, 4 and 5 were reloaded on the ship at San Francisco. On August 11, 1947, the ship sailed from San Francisco for Havana with only said 3232 tons of rice cargo aboard and she arrived in Havana on August 31, 1947, and completed discharge of the said 3232 tons of rice on September 18, 1947."

The value of the ship as repaired is agreed to be $275,000, exceeding the cost of repairs by over $100,000. Growers contends that under such conditions Frode was required to repair its vessel and proceed with the voyage, citing such cases as The Maggie Hammond, 9 Wall. 435, 19 L.Ed. 772 and the leading British case of Assicurazioni Generali v. S.S. Bessie Morris Co., (1892) 1 Q.B. 571, 576, 577, holding that the cargo owner may recover in damages if the vessel fails after repairs to carry the cargo forward. Frode, being so liable in damages, Growers contends that the abandonment of June 19 and the refusal to carry the cargo forward is a wrongful termination of the voyage. The contention continues that, being wrongful termination, Frode cannot by its wrong assert such termination in a limitation proceeding, since equitable principles there control as held in Hartford Accident & Indemnity Co. v. Southern Pacific Co., 273 U.S. 207, 47 S.Ct. 357, 71 L.Ed. 612, and by us in the earlier appeal of Growers, 9 Cir., 171 F.2d 662.

Frode contends that none of these cases considered such a question as the termination of the voyage and invokes the latest decisions of the Supreme Court that the limitation proceedings must be construed favorably to the shipowning petitioner,[1] stating in Just v. Chambers, 312 U.S. 383, 385, 61 S.Ct. 687, 690, 85 L.Ed. 903 that "The statutory provision for limitation of liability, enacted in the light of the maritime law of modern Europe and of legislation in England, has been broadly and liberally construed in order to achieve its purpose to encourage investments in shipbuilding and to afford an opportunity for the determination of claims against the vessel and its owner. Norwich & N. Y. Transp. Company v. Wright, 13 Wall. 104, 121, 20 L.Ed. 585. It looks to a complete disposition of what may be a 'many cornered controversy', thus applying to proceedings in rem against the ship as well as to proceedings in personam against the owner, the limitation extending to the owner's property as well as to his person. * * * " and in Coryell v. Phipps, 317 U.S. 406, 411, 63 S.Ct. 291, 293, 87 L.Ed. 363, that the " * * * well settled policy to administer the statute not 'with a tight and grudging hand' (Mr. Justice Bradley in Providence & New York S.S. Co. v. Hill Mfg. Co., 109 U.S. 578, 589, 3 S.Ct. 379, 386, 617, 27 L.Ed. 1038) but 'broadly and liberally' so as 'to achieve its purpose to encourage investments in shipbuilding and to afford an opportunity for the determination of claims against the vessel and its owner.' Just v. Chambers, 312 U.S. 383, 385, 61 S.Ct. 687, 690, 85 L.Ed. 903. * * *"

When the voyage terminated is one of these "many cornered controversies" of the statute so to be liberally construed. We agree with the statement of Growers' brief that "the court must look at the over-all picture in determining what the voyage actually is."

Frode certainly had the right to terminate the voyage at any time after it discovered it was entitled to limit its liability by the excess of Growers' claim over the Frej's value. It was an equitable procedure to advise Growers that it had done so at as early a date as possible, to enable Growers to obtain other transportation. Frode is a Swedish corporation managed in Sweden, and the thirteen days

---

[1] It is immaterial whether these decisions overrule the holding in La Bourgogne, 210 U.S. 95, 132, 134, 28 S.Ct. 664, 52 L.Ed. 973, that in determining the items of freight "pending" under then Rev. Stats. §§ 4283 and 4284, 46 U.S.C.A. §§ 183, 184, (210 U.S. at page 132, 28 S.Ct. at page 677) the statute should be construed against the shipowner. The later rule certainly includes the issue of the termination of the voyage which must be decided before the items of pending freight can be considered.

between the seizure of the vessel by Growers and the notice of termination of the voyage on June 19, was not an unreasonable period to elapse before so freeing Growers to look elsewhere for a ship.

■ We do not agree that, having the right then to refuse to continue the voyage was then any the less terminated because another reason, rightfully or wrongfully, was given for such action—a question we do not decide. Nor do we think that Frode must continue to increase the value of the vessel by upwards of $150,000 in repairs before the voyage may be terminated. 46 U.S.C. § 185, 46 U.S.C.A. § 185, gives Frode six months' time to file its petition for limitation. We hold that the filing of the petition is not a condition precedent to terminating the voyage and affirm the interlocutory decree holding that the notice of abandonment of June 19, 1947, terminated the voyage.

■ Frode having established that the voyage ended at San Francisco, the items of freight pending must be determined as of that date. Each bill of lading summarized the "freight prepaid" by the shipper to the ship, a typical bill stating it as follows:

contends that the excluded items are not for service to the cargo by the vessel. We do not agree. The bill of lading prepared by Frode should be construed against it and, since it describes the items as freight and they are not shown not to be services by Frode to the cargo, we hold that they are an earning of the voyage for the carriage of cargo. The Maine v. Williams, 152 U.S. 122, 131, 132, 14 S.Ct. 486, 38 L. Ed. 381. This court has held that all the earnings of a mining dredge must be included in pending freight. The Carson, 9 Cir., 104 F.2d 762, 765.

The decree of the district court is reversed as to the exclusion of these items from the freight pending and the district court is ordered to amend its decree to include in the pending freight the stipulated total of $8,873.03.

POPE, Circuit Judge (concurring).

I concur in the opinion of Judge Denman, but I think something further should be said. Had the vessel not proceeded to Havana the appellant would have been in no position to contend that the voyage terminated there. It reached Havana only because Frode was induced to have it pro-

| | | | | |
|---|---|---|---|---|
| 1,014,250 | @ 92¢ | per 100 lbs. / 100 Lbs. | $ | 9,331.10 |
| Landing Fee | @ .05¢ | per ××××× lbs. | $ | 507.13 |
| Manifest Fee | $.100B/L | per cub. ft. / 2,000# | $ | 1.00 |
| Handling | @ .40¢ | per ×××××××× ft. | $ | 202.85 |
| Wharfage | @ .35¢ Per 2000# | | $ | 177.49 |
| | | | $ | |
| *Freight to be Prepaid/××××××× | | | $ | 10,219.57 |

The district court refused to include in the pending freight any of these items other than the first. It is stipulated that the excluded four items in all the bills aggregate $8,873.03.

■ Paragraph 15 of the bill of lading provides that the freight "hereunder" is to be deemed earned whether collectible or prepaid ship or goods lost or not lost. Frode

ceed there by the stipulation that "The carrying on of the cargo and/or this agreement shall in no way prejudice any right or rights which either party now has and shall not affect the present status quo of the purported abandonment of the voyage at San Francisco, California." In making the claim which Rice Growers now does, it is proceeding contrary to its own agree-

ment and attempting to take advantage of circumstances which it stipulated should have no effect upon the rights of the parties.

Since I know of no reason why parties in this situation are prohibited from making such a stipulation, I think that Rice Growers is barred by its own agreement from urging that the arrival at Havana constituted the end of the voyage.