## STANDARD DREDGING CO. et al. v. KRISTIANSEN.
### No. 111.

Circuit Court of Appeals, Second Circuit.
Nov. 13, 1933.

Alexander, Ash & Jones, of New York City (Edward Ash and Lawson R. Jones, both of New York City, of counsel), for appellant.

Carl R. Wittekind, of New York City (Edmund F. Lamb and Purdy & Purdy, all of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

Kristiansen sued one of the petitioners, the National Dredging Company, in the state court under the Jones Act (46 USCA § 688) for personal injuries suffered on a barge, while he was employed as a seaman on a dredge. His declaration alleged that the defendant owned the dredge, and was working her on navigable waters, using the barge, over which it had complete control, as a tender to supply oil to the dredge; that the barge was unseaworthy, due to an uncovered and unlighted hatch, and because her hatch covers were defective; that the master of the dredge directed him to board the barge at night; and that, while there, he fell through the hatch. The action was for the injuries so received. The two petitioners filed a petition to limit liability under R. S. §§ 4283, 4284 (46 USCA §§ 183, 184). They alleged that the National Dredging Company owned the dredge, and was a bare-boat charterer of the barge, of which the Standard Dredging Company was owner, and that the injuries had occurred without their knowledge; they offered to surrender only the barge, and prayed the usual injunction against Kristiansen's action, which they got. An issue as to limitation being raised, it was referred to a commissioner, who reported that the petition should be granted upon surrender of the barge alone; but the judge sustained exceptions to the report, and dismissed the petition, unless the petitioners surrendered the dredge as well. Their appeal is from the imposition of this condition; the right to limit being apparently conceded by Kristiansen in case the dredge is included. The barge was being used upon the same business as the dredge; she supplied oil not only to her, but to two attendant tugs which assisted in the operation. Occasionally she would go to shore to have her tanks filled, but usually she lay near the dredge, and was moved alongside of, and served, the dredge or the tugs, as occasion demanded; she was therefore a part of the flotilla engaged in the venture, as were the tugs also.

Liverpool, etc., Nav. Co. v. Brooklyn Eastern District Terminal, 251 U. S. 48, 40 S. Ct. 66, 64 L. Ed. 130, involved the right to limit in a case where a tug brought her tow, a car float, into collision with a steamer, which sued the common owner of both in personam. The court proceeded in analogy with the privilege or lien of collision, and held that as no lien arose against the float— an innocent instrument—the owner might limit his liability by surrendering only the tug. Mr. Justice Holmes suggested that the right to limit may have its origin in the archaic notion that an owner could exempt himself from liability by the surrender of the offending object; though later in Re East River Co., 266 U. S. 355, 366, 45 S. Ct. 114, 69 L. Ed. 324, he thought that the historical basis of this was an open question. In any event we understand the decision as settling the law that in cases where the injury is to a third person, to whom the owner owes no duty based upon consent, he may limit his liability to the ship against which a maritime lien would arise from the wrong; it is quite likely that the court had in mind a more general doctrine, but at least it meant so much.

Except for the remedy of maintenance and cure, a seaman had no lien for wrongs done on board ship, not resulting from her unseaworthiness; indeed he had no cause of action, because of the fellow servant doctrine. The Osceola, 189 U. S. 158, 23 S. Ct. 483, 47 L. Ed. 760; Carlisle Packing Co. v. Sandanger, 259 U. S. 255, 42 S. Ct. 475, 66 L. Ed. 927. The Jones Act, though it created a cause of action, did not raise a corresponding lien (Plamals v. The Pinar Del Rio, 277 U. S. 151, 48 S. Ct. 457, 72 L. Ed. 827); and the owner may limit his liability. In re East River Towing Co., supra, 266 U. S. 355, 45 S. Ct. 114, 69 L. Ed. 324. The ratio decidendi of Liverpool, etc., Nav. Co. v. Brooklyn Eastern District Terminal, supra, 251 U. S. 48, 40 S. Ct. 66, 64 L. Ed. 130, cannot therefore apply to the situation except with reservation, for the right to limit presupposes a vessel to surrender. A natural course might be to require the surrender of the vessel on which the wrong occurs; but the decisions in the lower courts scarcely bear that out. Thus, in The Bordentown (D. C.) 40 F. 682, the wrong was in setting out at all, and the decision as to that was made by the master of one tug only. The other was not in fault on any view; no lien could arise against her. Yet the owner was required to surrender both, because both were engaged in a common venture. Again in The Columbia, 73 F. 226 (C. C. A. 9), the injuries were caused by the carelessness of a bargee in stowing cargo; one person was the common owner of the barge and her tug, which lay alongside, and both were treated as one. The injured parties included members of the tug's crew, who

sued for breaches of duties, incidental to contracts of service. Obviously no lien arose against the tug. Thompson, etc., Ass'n v. McGregor, 207 F. 209 (C. C. A. 6), grew out of an explosion on a lighter; the owner was obliged to surrender a tug, engaged in pulling on a wreck to which the lighter was made fast. The tug was not at fault and of course there was no lien against her. The court below did make a distinction between this tug and others attendant upon the operations, not so attached. But the claimant did not appeal, and the Circuit Court of Appeals did not have to pass on that point. Our own decision in The Sunbeam, 195 F. 468, accords with these decisions only in case it be a valid distinction that the injured man was not a servant, but an invited person, and that for that reason the liability was not contractual in any sense. The derrick, Sunbeam, and the barges Skylight and Howard, were all connected, though the opinion does not say so, and the court certainly did not think it important; apparently it went on the theory that the derrick was the only "wrongdoer." As to the putative distinction, it is to be remembered that the duty to an invited person, though not contractual, is nevertheless consensual in origin.

Disregarding The Sunbeam, supra (C. C. A.) 195 F. 468, in 1927 the decisions in the lower courts are that to limit liability for breaches of duties, incidental to a contract, all vessels which take part in the undertaking must be surrendered. Suits in rem, like The W. G. Mason, 142 F. 913 (C. C. A. 2), are not in point; they are merely holdings as to when a lien comes into being, and would be relevant only in case it were already assumed that an owner need surrender no more than vessels subject to liens. However, whatever may be thought of the law before 1927, Sacramento Nav. Co. v. Salz, 273 U. S. 326, 47 S. Ct. 368, 370, 71 L. Ed. 663, settled it. True, that case arose under section 3 of the Harter Act (46 USCA § 192), but the court expressly declared that the question was the same in cases of limitation. A tug and her barge in tow were treated as a single vessel, because owned in common and engaged in a common enterprise, and the doctrine of The Columbia, supra (C. C. A.) 73 F. 226, was used as the keystone of the reasoning. The court thought Liverpool, etc., Nav. Co. v. Brooklyn Eastern Terminal, supra, 251 U. S. 48, 40 S. Ct. 66, 64 L. Ed. 130, plainly distinguishable; it was concerned with "a pure tort; no contractual obligations were involved." When they are, it is possible to regard an "entire flotilla * * *

as one vessel for the purposes of the undertaking in which the common owner was engaged." In that case the relevant inquiry is, "what constituted the vessel by which the contract of transportation was to be effected." In view of this language and of the use made of The Columbia, supra (C. C. A.) 73 F. 226, when the duty involves "contractual obligations," the whole flotilla embarked in the enterprise is the "vessel"; a conclusion which would comprise not only the barge here, but the two attending tugs as well.

The only questions for us are whether the physical connection of the craft is material, and whether the National Dredging Company's duty to Kristiansen "involved contractual obligations." As to the first, it is quite true that, except for Thompson, etc., Ass'n v. McGregor, supra (C. C. A.) 207 F. 209, in the District Court, this is the only instance we have found, in which the injured party has sought to hold a vessel, separated from that on which the injury took place. Perhaps separation might serve as a practical rule of thumb; we are quite aware of the restriction upon the right to limit which must follow upon making functional unity the test. But there is really nothing in reason to be said for such a doctrine; it exposes the remedy of the injured party to the merest sport of chance. It would for example be a strange whimsy to say that the dredge must here have been surrendered, had the barge happened to be made fast alongside, but that she need not, because there was a thousand feet of water between them. Surely that cannot be a significant difference, when substantial interests are at stake. Even as the law is, there may be strange results. If, for example, Kristiansen had mishandled the barge's anchor and set her adrift, so that she fouled another barge nearby, or injured some one on board, we understand that the barge alone would have to be surrendered; indeed, in an action in personam against the National Dredging Company, only its interest in her as bare-boat charterer. But at least there is a consistency in legal theory in that, though it may be only of historical origin. When, however, the unity of the vessels is made to depend upon their devotion to a single venture, it would be egregious to introduce a purely fortuitous condition which can have no rational relation to the interests involved. We conclude that separation is immaterial.

That the National Dredging Company's duty to Kristiansen "involved contractual obligations" seems to us clear. We might in-

deed rest for that upon the approval given in Sacramento Nav. Co. v. Salz, supra, 273 U. S. 326, 47 S. Ct. 368, 71 L. Ed. 663, to The Columbia, supra (C. C. A.) 73 F. 226. That case is on all fours with that at bar except for the separation of the vessels. But it is not necessary to go on that alone. True, such actions are ordinarily brought upon the case, but for the matter of that, so originally were all assumpsits; and actions against common carriers are often still so brought, though they are clearly "contractual." The form of the remedy is of no moment; the duty is raised out of the contract of service, and while it would of course be untrue to say that the master must in fact undertake its performance, he may not be charged with it, unless he accepts the servant in his employ. Probably to-day in most cases he in fact understands that he must protect him as the law prescribes; so that if the question were put to the proof the servant could make out an implied undertaking to perform the imposed duty. That very possibility shows how tenuous would be a test based on contracts, strictissimi juris. We do not so understand Sacramento Nav. Co. v. Salz, supra, 273 U. S. 326, 47 S. Ct. 368, 71 L. Ed. 663; rather we read it as meaning that when the duty violated, though imposed by law, presupposes at least the relation of master and servant, the owner must surrender all those vessels which share in the execution of the venture; collectively they are "such vessel" within R. S. § 4283 (46 USCA § 183).

Decree affirmed.