In the Matter of Cross Contracting Company, Inc., a Louisiana corporation, for Exoneration from and/or Limitation or Liability as Owner of DRILL BARGE NO. 2.

**CROSS CONTRACTING COMPANY, Inc., Appellant-Cross Appellee,**

v.

**Joseph LAW, Jr., Willie Mann, Jr., et al., Appellees-Cross Appellants.**

No. 71–1037.

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1972.

Rehearing Denied Jan. 27, 1972.

Certiorari Denied April 24, 1972. See 92 S.Ct. 1610.

Godbold, Circuit Judge, filed opinion specially concurring in part and dissenting in part.

Harry Zuckerman, Miami, Fla., William R. Eckhardt, Houston, Tex., W. L. Adams, Miami, Fla., for appellant; Ehrich & Zuckerman, Miami, Fla., Vinson, Elkins, Searls & Smith, Houston, Tex., of counsel.

Arthur Roth, Miami, Fla., for Smith and others.

Donald Feldman and Feldman & Abramson, Miami, Fla., for Joseph Law and Willie Mann.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

Cross Contracting Company, Inc. filed this petition in Admiralty under Rule 9(h), Fed.R.Civ.P., for exoneration from and/or limitation of liability (in accordance with 46 U.S.C. §§ 181–195 and Supplemental Admiralty Rule F, Fed.R.Civ. P.), as owner of Drill Barge No. 2.[1] An ad interim stipulation in the sum of $25,000, the value of the barge, was posted with the Court. Cross, a subcontractor, was engaged in construction of a levee for the purpose of flood control in Lake Okochobee, Florida, a navigable waterbody in Florida, pursuant to a prime contract entered into with the U. S. Army Corps of Engineers. Cross used a number of pieces of equipment in the work, some of which consisted of vessels and equipment on vessels as well as equipment on land. Cross's drilling barges were used to dig a canal, the dirt from which was used to build the levee. The drilling barges would blast rock and soil at the bottom of the lake and this operation would be followed by draglines which would pull the material up from the water to form the levee. A dynamite explosion occurred on Drill Barge No. 2 which caused serious personal injuries to five claimants, all of whom were employees of Cross. They filed a number of damage suits against petitioner Cross for personal injuries which they alleged were caused by negligence and unseaworthiness.

This interlocutory appeal (28 U.S.C. § 1292(a) (3)) grows out of the motion of claimants (under Supplemental Admiralty Rule F(7), Fed.R.Civ.P.) to require that petitioner increase the amount of security to an amount equal to the value of all of Cross's equipment, including "freight then pending" (see 46 U.S.C. § 183(a)), that is, the amount due Cross under the contract for work performed up to the time of the accident.

The District Judge conducted a hearing, took evidence, made findings, and entered an order under Supplemental Admiralty Rule F(7), Fed.R.Civ.P., requiring an increase in the security. He found that Cross was performing its contract "with a flotilla of vessels working with each other to complete the Cross portion of the contract." He also found that Cross had other equipment working on the job which was not afloat or part of the flotilla and that only those pieces of equipment which were afloat should be considered a part of the flotilla. He excluded from the flotilla and the amount of the bond those pieces of equipment, draglines, land vehicles and office equipment which were not working afloat on navigable waters at the time of the accident. The District Judge, accordingly, ordered an increase of the ad interim stipulation from the original sum of $25,000 covering Barge No. 2 to the value of the entire flotilla and its equipment totaling $247,000. He declined to add, however, the amount

[1]. Especially pertinent to our discussion herein are the provisions of 46 U.S.C. § 183(a) which read as follows:

"The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

of pending freight, concluding that an attempt to determine the value thereof "would necessarily be conjectural."

This case requires an interpretation of the so-called "flotilla doctrine" in that we must determine what shall constitute the limitation fund, and whether it shall consist only of the value of Drill Barge No. 2, as the offending vessel. In doing so, we must decide also whether any additional amount shall include the value of all of petitioner's vessels and equipment engaged in the project or of only that which was afloat at the time of the accident.

Petitioner relies most strongly on Liverpool, B. & R. P. S. Navigation Co. v. Brooklyn Eastern District Terminal, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130 (1919), where a tug which was proceeding with a car float loaded with railroad cars lashed to its port side, and on its starboard side a disabled tug, all belonging to respondent, caused the car float to collide with another vessel. The Court held that "the actively responsible vessel," that is, the tug and its value alone, should be included in the limitation fund but that the value of the car float and disabled tug need not be included since the tug alone was the offending vessel, under the circumstances described.

Later, however, in another Supreme Court decision, Sacramento Nav. Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663 (1927), petitioner in limitation, a common carrier, was required to surrender—as the "offending vessel"—both a steamboat and the barge it was towing, where the barge came into collision with a British ship and was swamped, losing its cargo of a load of barley. Respondent's claim was based on a contract of affreightment with petitioner. The Court denied petitioner's contention that the barge alone should be surrendered. The Court distinguished its holding in *Liverpool* as follows:

"The distinction seems plain. There the libel was for an injury to a ship in no way related to the flotilla. It was a pure tort; no contractual obligations were involved; and the simple inquiry was, What constituted the 'offending vessel'? Here we must ask, What constituted the vessel by which the contract of transportation was to be effected? a very different question." 273 U.S. at 332, 47 S.Ct. at 370.

Two Second Circuit cases are pertinent to the factual situation here. In Standard Dredging Co. v. Kristiansen, 1933, 67 F.2d 548, that Court held in a case involving a seaman's claim for injury sustained while working on an unseaworthy barge, that petitioner in limitation must surrender not only the barge but also a dredge and two tugboats, all of which shared in the execution of the venture and were held collectively to be the "vessel" within the meaning of the limitation statute. In that case, the Court (L. Hand, J.) said:

"* * * whatever may be thought of the law before 1927, Sacramento Nav. Co. v. Salz, 273 U.S. 326, 47 S. Ct. 368, 370, 71 L.Ed. 663, settled it. True, that case arose under section 3 of the Harter Act (46 U.S.C.A. § 192), but the court expressly declared that the question was the same in cases of limitation. A tug and her barge in tow were treated as a single vessel, because owned in common and engaged in a common enterprise, and the doctrine of The Columbia, supra (C.C. A.) 73 F. 226, was used as the keystone of the reasoning. The court thought Liverpool, etc., Nav. Co. v. Brooklyn Eastern Terminal, supra, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130, plainly distinguishable; it was concerned with 'a pure tort; no contractual obligations were involved.' When they are, it is possible to regard an 'entire flotilla * * * as one vessel for the purposes of the undertaking in which the common owner was engaged.' In that case the relevant inquiry is, 'what constituted the vessel by which the contract of transportation was to be effected.' In view of

this language and of the use made of The Columbia, supra (C.C.A.) 73 F. 226, when the duty involves 'contractual obligations,' the whole flotilla embarked in the enterprise is the 'vessel'; a conclusion which would comprise not only the barge here, but the two attending tugs as well." 67 F.2d at 550.

Finally, the Court said:

"We do not so understand Sacramento Nav. Co. v. Salz, supra, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663; rather we read it as meaning that when the duty violated, though imposed by law, presupposes at least the relation of master and servant, the owner must surrender all those vessels which share in the execution of the venture; collectively they are 'such vessel' within R. S. § 4283 (46 U.S.C.A. § 183)." 67 F.2d at 551.

In United States Dredging Corp. v. Krohmer, 1959, 264 F.2d 339, another limitation of liability case, the Second Circuit held that the widow of a deceased crewman who was killed in a fire on one of petitioner's vessels was entitled to have petitioner surrender five other vessels engaged in the same venture at the same time where all of the attending vessels were necessary for performance of their owner's contract. The Court said:

"In Sacramento Navigation Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L. Ed. 663, although the case arose under the Harter Act, the Court resolved it by application of the same rules that limit a shipowner's liability; and following the doctrine of The Columbia, 9 Cir., 73 F. 226, held that, when a barge and tug were transporting a cargo of barley, both were to be deemed a single 'vessel,' and the tug must be surrendered as well as the barge. In Standard Dredging Co. v. Kristiansen, 2 Cir., 67 F.2d 548, a seaman employed on a dredge was injured while working on an unseaworthy barge, which was used as a tender to supply oil to the dredge, and which

at the time was not made fast to her. We held that the dredge must be surrendered as well as the barge, because each was part of the means that the shipowner was using to perform its contract. The owner had assumed 'contractual obligations' with the claimant, and that involved any ships that it devoted to the performance of its contract with a third person. As a new question it is hard to see why the shipowner's liability should be broader when it presupposes a consensual relation with the claimant than when it rests upon the invasion of the interest of a person with whom the owner has had no preceding relation. However, it is at least doubtful whether the motives that originally lay behind the limitation are not now obsolete; and certainly we should now have no warrant for extending its scope, when the liability is for personal injury arising from the shipowner's fault." 264 F. 2d at 341.

In this Circuit, in Brown & Root Marine Operators, Inc. v. Zapata Off-shore Co., 1967, 377 F.2d 724, we affirmed a District Court ruling which required that petitioner in limitation furnish the value of three vessels which "were contractually engaged in a common enterprise," namely, a barge, a derrick barge, and a tug. The barge which had been improperly anchored at the time of the occurrence of a hurricane collided with Zapata's oil well resulting in substantial damage. Petitioner had entered into a contract with Zapata for the furnishing of certain labor and materials in pursuance to which it had furnished the three vessels referred to. Petitioner sought to limit its liability to the value of that barge but we held that it must surrender the other two vessels which were engaged in the common venture under a single command. We held that "The fact that the vessels are not physically bound together is irrelevant; the test is ' * * * devotion to a single venture * * *.' " Id. at 727.

■ As we have pointed out, the District Judge held that Cross was perform-

ing its contract with a flotilla of vessels working with each other. It is also clear that claimants here were employees of petitioner and that the contractual relationship of master and servant existed between them. The circumstances, therefore, compel affirmance of the District Judge ruling that the value of Cross's entire flotilla must be surrendered in this case under the petition for limitation.

■ We agree with the holding of the District Judge relative to "freight then pending" and the rejection of respondents' contention in that regard. The evidence shows that Cross is a subcontractor performing construction work in the building of a levee. There is little relationship between pending freight as used in the commonly accepted maritime cases, and money due for construction of a levee, as described here. There was, therefore, no "voyage" as such. Likewise, there is no practical way to compute freight, there being no evidence in the record by which such a computation could be made. See LaBourgogne, 210 U.S. 95, 134, 135, 141, 28 S.Ct. 664, 678, 679, 681, 52 L.Ed. 973 (1908); The Black Eagle, 2 Cir., 1937, 87 F.2d 891, 893, 894; In re Pacific Inland Nav. Co., D.C.Hawaii 1967, 263 F.Supp. 915.

Affirmed.

GODBOLD, Circuit Judge (specially concurring in part and dissenting in part):

As to the cross-appeal only, I would reverse. The District Court found there was no pending freight because there was no voyage, and the majority opinion appears to do the same. The term "voyage" is not a qualitative term describing the type of endeavor in which a vessel is engaged and restricting limitation of liability proceedings to those vessels which move across the water from one point to another. It is a sequential term, separating one adventure or undertaking or trip from another, employed as a means of dividing the activities of the vessel from what has occurred before the undertaking in question, and what, if anything, has occurred subsequent to it, so that there can be identification both of what should go into the limitations fund and of what persons were exposed to the perils of the venture so as to be entitled to participate in the fund. Deslions v. La Compagnie Générale Transatlantique, 210 U. S. 95, 135, 28 S.Ct. 664, 52 L.Ed. 973, 992 (1907).

"Freight pending" means the earnings of the vessel in the undertaking, and it is not limited to payment for the transportation of goods, but "[i]t is applied to all rewards, hire, or compensation, paid for the use of ships, either for an entire voyage, one divided into sections, or engaged by the month, or any period." The Main v. Williams, 152 U.S. 122, 129–130, 14 S.Ct. 486, 487, 38 L.Ed. 381, 384 (1893).[1]

In this case, as part of its total undertaking, Cross used movable but propulsionless "drilling barges" to blast rock and soil from the bottom of a lake, and then employed draglines, some floating on populsionless barges and some land based, to move the loosened material from the lake bottom and form it into a levee. Payments to Cross for that part of the undertaking which was carried on by and from vessels were parts of the overall payments made to Cross for the levee construction project. Though mingled with other items of compensation, the earnings of the vessels in this case are no less freight pending than the payment to the Captain Jack, a propulsionless derrick lighter, for raising a sunken vessel from a harbor, The Captain Jack, 162 F. 808 (D.C.Conn.1908), or the earnings of a dredge floating on a bay and engaged in deepening a channel by removing material from the bottom

---

1. This case traces in some detail the historical meaning of "freight" as the price paid for the use of a ship, and points out the object of limitation of liability as one of limiting liability to the interest of the owners in the "adventure." 152 U.S. at 129–131, 14 S.Ct. 486, 38 L.Ed. at 384.

of the bay, The Carson, 104 F.2d 762 (9th Cir. 1939).

The evidence in the present case showed the gross earnings received by Cross on the overall undertaking. The earnings of the vessels are no less freight pending by reason of the fact that Cross made no attempt to ascertain and make known to the court what part of the gross payments represented earnings of the vessels. Instead Cross took the position there was no freight pending. The burden was not upon claimants but upon Cross to establish the portion of the gross properly allocable to earnings of the vessels. "The privilege of limiting liability is granted the owner of an offending vessel on condition that he surrender the value of his interest in 'such vessel, and her freight the pending.'" In re W. E. Hedger Co., 59 F.2d 982 (2d Cir. 1932). "The petitioner in a limitation proceeding has the burden of proving compliance with the conditions which entitle him to limit liability. The Rambler, 290 F. 791, 792 (C.C.A.2). He must show the value of his interest in the vessel and her pending freight." *Id.* at 983. Until Cross determined, and surrendered, the amount of its earnings from the vessels, it had not complied with the conditions precedent to limitation of liability. The majority confer a benefit on Cross from its failure to discharge the condition.

In Rice Growers Ass'n of Cal. v. Rederiaktiebolaget Frode, 176 F.2d 401 (9th Cir.) cert. denied 338 U.S. 878, 70 S.Ct. 159, 94 L.Ed. 539 (1949), the gross amount of a bill of lading was denoted by the bill itself as freight, and the shipowner argued that there should be excluded from the gross amount items of services to cargo on the ground they were not services rendered by the vessel. The lower court refused to deduct them because the petitioner had failed to prove that the services were not rendered by the ship, and the appellate court affirmed. In In re W. E. Hedger Co., *supra*, the District Court found that the freight pending of a tug was the gross amount collected as freight from the barges in its tow (it being admitted that the flotilla rule did not apply). The tug owner attempted unsuccessfully to prove that others were entitled to 45% of the gross and it to only 55%, but its proof failed. The Court of Appeals affirmed. Its rationale is already quoted above.

It is simply wrong, when a petitioner asserts there is no freight pending, but in fact there is, to deny the claimants any protection of freight pending because they have not established what part of petitioner's gross is allocable thereto. This misconceives the purpose, the operation and the burdens of a limitation proceeding. And, pragmatically, it imposes an awkward, if not unworkable, approach. The petitioner, with the books, records and knowledge, is far more able to allocate its gross than are injured claimants.