Richard S. Lake, J.
This maritime action was tried to court and jury with the injured seaman plaintiff receiving a verdict in the amount of $59,500. The parties reserved to the court upon stipulated facts (partially in writing and partially on the record on March 27, 1972) defendant’s claim to limit its liability pursuant to subdivision (a) of section 183 of title 46 of the United States Code. The parties agree as to the applicability of the statute, but pose for the court the issue of what was the “ vessel ” which must be surrendered to fund plaintiff’s verdict. The circumstances, at least defendant says, make it a case of first impression.
Defendant’s Barge No. 801 with a stipulated value of $16,500 left Port Washington, N. Y. after completing the unloading of its cargo of cement. Plaintiff was aboard as its captain and only crew member. At the time there was a scattering of gravel and cement dust on the forward deck and forward edge of the deck house roof. No. 801 proceeded to Staten Island where it was docked and secured by lines to defendant’s mother Barge No. C-3 with a stipulated value in excess of plaintiff’s verdict. After No. 801 had taken on another cargo of cement with a stipulated value of $18,000 but while still secured to No. C-3 plaintiff slipped on the gravel and cement dust on the deck house roof suffering the injuries which were the subject matter of this action. No. C-3 was utilized by defendant solely to move its cement from Kingston, New York to Staten Island where the cement was offloaded onto No. 801 and similar sister barges for distribution to one or more of defendant’s 27 plants in the metropolitan area.
An historical dichotomy has been drawn in the cases between a pure tort situation where the injured party is a stranger to the owner of the vessel causing the damage and the situation where the injured party is in a contractual or consensual relationship with the owner of the vessel causing the damage. In the former only the offending vessel need be surrendered to limit liability, whereas in the latter the “flotilla” rule has evolved *751 whereby all vessels dedicated to the performance of the contract must be surrendered; (Sacramento Nav. Co. v. Salz, 273 U. S. 326 [1927]); Brown & Root Marine Operators v. Zapata Off-Shore Co., 377 F. 2d 724 [C. A. 5,1967]; Deep Sea Tankers v. Long Branch, 258 F. 2d 757 [C. A. 2d, 1958], cert. den. 358 U. S. 933).
The flotilla rule has been stretched to cover cases where the injured party is a seaman employed by the owner of the vessel causing the damage as contrasted with a third party in a contractual relationship with such owner (United States Dredging Corp. v. Krohmer, 264 F. 2d 339 [C. A. 2d 1959], cert. den. 360 U. S. 932; Standard Dredging Co. v. Kristiansen, 67 F. 2d 548 [C. A. 2d 1933]; Thompson Towing & Wrecking Assn. v. Mc-Gregor, 207 F. 209 [C.C.A. 6th, 1913]; but, see, The Sunbeam, 195 F. 468 [C.C.A. 2d, 1912] [injured party an invitee rather than an employee]).
So far both parties concur. Defendant, however, argues that in every case in which the 11 flotilla ’ ’ rule has been applied to the advantage of a seaman, his employer has been engaged in the performance of a contract with a third party at the time of the accident. Such contract is the rationale, further argues defendant, for including seaman under the “ flotilla ” rule, and, since no third-party contract is involved here, the “ flotilla ” rule is inapplicable.-
Defendant’s research into the cases would appear to be accurate. Indeed The Sunbeam (supra), would appear to support its theory because, although the relationship of the injured party there may not have been contractual, it was certainly consensual. However The Sunbeam was decided before the dichotomy referred to above was firmly established by the Supreme Court in Sacramento Nav. Co. v. Salz (273 U. S, 326, supra). If therefore, the matter is one of first impression the court declines to adopt the distinction urged by defendant.
To hold that plaintiff here can recover only against the barge upon which he served whereas under exactly the same factual circumstances, he could have the whole flotilla if defendant’s business had been organized differently would be to expose a seaman’s remedy to the whim of chance. It would introduce a fortuitous criteria without any rational relationship to the interests involved. Today there is some cause to question the rationality of the entire distinction between pure tort and contractual cases, see United States Dredging Corporation v. Krohmer (supra, p. 341). Perhaps same is too strongly noted in precedent to disturb, but the court is not about to elaborate on *752 it by adding a subsidiary dichotomy. The real nub of the contractual cases is not the contract as some kind of talisman but the contract as a measuring rod for the essential unity of all vessels devoted to a single venture (see Brown & Root Marine Operators v. Zapata Off-Shore Co., supra, p. 727; see Matter of Midland Enterprises, 296 F. Supp. 1356, 1360-1361 [S.D. Ohio, 1968]). The same reasoning is pertinent to seaman cases (see Standard Dredging Co. v. Kristiansen, 67 F. 2d 548, 551, supra; Thompson Towing & Wrecking Assn. v. McGregor, 207 F. 209, 214, supra).
Defendant’s arsenal is not thus exhausted, however. Even if the “ flotilla ” rule is to be applicable to plaintiff here, defendant argues that it is the flotilla at the time of the fault — allowing the accumulation of gravel and cement dust in Port Washington while No. 801 stood alone (The George W. Pratt, 76 F. 2d 902 [C.C.A. 2d, 1935]; The Bordentown, 40 F. 682 [S.D.N.Y., 1889]). The court disagrees. It is the flotilla at the time of the injury, and, in any event, the fault of unseaworthiness is not static but continuing as long as the condition continues. Furthermore the evidence at trial certainly would permit an inference that additional cement dust accumulated during the reloadings at Staten Island contributing to happening of the accident.
No. C-3 must be surrendered by defendant as well as No. 801.