In the Matter of TRADITION PARTNERSHIP
and the Vessel M/V TRADITION

High Court of American Samoa
Trial Division

CA No. 142-87

November 13, 1987

Before KRUSE, Associate Justice.

Counsel: For Complainant, William Reardon

Opinion and Order on Complaint for Exoneration from
or Limitation of Liability:

99

While the tuna vessel M/V Tradition was engaged in a fishing voyage during the spring of 1987, one of its crew was injured in an accident. According to the sketchy documents filed so far, the sailor was trying to disengage the Tradition's skiff with the aid of a sledgehammer. During this undertaking, the sledgehammer recoiled and hit the sailor in the eye. The sailor, Vaiula Sosoatu, has filed a claim against Tradition Partnership, owner of the vessel. Tradition has filed a petition under T.C.R.C.P. Supplemental Rule F for exoneration from or limitation of liability. The United States Code sets out this right and draws its boundaries at 46 U.S.C. §§ 183-188.

The petition seeks approval of an ad interim stipulation and bond in the amount of $75,000, allegedly the value of the Tradition's skiff. While 46 U.S.C. § 183 does permit a shipowner to limit its liability for injuries suffered aboard its vessel to the value of the vessel itself, the bond offered here raises the question whether the limitation provision would really permit the shipowner to limit its liability to the value of the skiff under such circumstances as these. Although Sosoatu has not raised the issue, T.C.R.C.P. Supplemental Rule F(2) seems clearly to require the Court to address it at this point. ("The complaint shall set forth . . . all facts necessary to enable the court to determine the amount to which the owner's liability shall be limited.")

Approval of the petition rests upon the meaning of the term "vessel" as it appears in § 183(a). It should first be noted that the petition does not set forth the circumstances of the accident in great detail. If, for example, Sosoatu was standing on the deck of the Tradition while trying to disengage its skiff, or if the skiff was still lashed to the top of the Tradition, it would seem factually unjustifiable to commence an inquiry into whether the skiff was itself a "vessel" for limitation purposes. Under those circumstances the vessel aboard which the accident took place would be the Tradition, and tendering the value of its skiff would be inadequate. Nevertheless, if the skiff could not legally be considered a § 183 vessel under any circumstances, the need for more particular factual information would dissolve. We therefore proceed to consider the legal status of the skiff under the limitation rules.

100

The skiff would clearly be a vessel for the purposes of conferring admiralty jurisdiction over the plaintiff's claim. See generally Benedict on Admiralty, Vol. 1, ch. 10-10 § 164 (6th ed. 1985). Yet admiralty law is constructed so as to treat a structure as a vessel or other appropriate maritime object for the purpose of some admiralty rules but not for others. See id., ch. 10-2 § 161: Lambros Seaplane Base v. The Batory, 215 F.2d 228 (2d Cir. 1954) (seaplane involved in accident over water may be subject of maritime salvage); Noakes v. Imperial Airways, Ltd., 29 F. Supp. 412 (S.D.N.Y. 1939) (but not a vessel within meaning of limitation of liability statutes). The court must therefore resolve the question before it with reference to those decisions specifically discussing what a vessel is for limitation purposes.

The High Court's duty under rule F(2) to determine the amount to which the owner's liability shall be limited requires a determination whether, as Tradition Partnership maintains, the skiff is the whole vessel. No cases the Court could discover considered a petition seeking to isolate a subservient craft, such as a skiff or a lifeboat, as the vessel to whose value liability should be limited. A confused principle called the "flotilla rule" has been devised, however, to govern disputes over whether liability should be limited to the value of a single vessel or of two or more commonly owned vessels involved in a maritime claim.

The rule distinguishes between "pure tort" cases, in which the parties have no legal relationship to one another, and "consensual" cases, in which the injured party has a contractual relationship to the vessel owner. In a pure tort case, the owner's liability cannot exceed the value of the single "offending vessel". Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn Eastern District Terminal; 251 U.S. 48 (1919). In a "consensual" case, an owner who has used one or more vessels in a single contractual enterprise must put up the value of the entire flotilla. Sacramento Navigation Co. v. Salz, 273 U.S. 326 (1927).

The "consensual" rule applies where, as here, the injured party is an employee of the shipowner. Standard Dredging Co. v. Kristiasen, 67 F.2d 548 (2d Cir. 1933), cert. denied 290 U.S. 704 (1934).

101

In <u>Kristiansen</u>, the complainant was a seaman employed by Standard on a dredge. He was required to perform duties aboard an unattached barge, and was injured while working aboard the barge. Standard attempted, as Tradition does now, to limit its liability to the value only of the vessel aboard which the injury allegedly took place. The court required payment into the limitation fund of the value of both dredge and barge: " . . . when the duty violated, though imposed by law, presupposes at least the relation of master and servant, the owner must surrender all those vessels which share in the execution of the venture; together they are 'such vessel' within [§ 183(a)]." 67 F.2d at 551.

These cases indicate that, even if the injury took place on board the skiff but not on board the Tradition, and even if a skiff by itself could be a vessel for limitation purposes, under the circumstances here the skiff and the Tradition collectively form the "vessel" referred to in 46 U.S.C. § 183(a). Many abhor the flotilla rule (<u>see</u>, <u>e.g.</u>, G. Gilmore & C. Black, The Law of Admiralty 918 (2d ed. 1975)), but it still lives and has been cited as authority in less dusty caselaw than that discussed above. <u>See, e.g., In re Oswego Barge Corp.</u>, 439 F. Supp. 312 (N.D.N.Y. 1977).

The nature of petitioner's asserted limitation, however, makes it almost unnecessary to go through an analysis under the seemingly artificial flotilla rule. It defies logic to suggest that the Tradition is not a part of the skiff, but that the skiff alone is the section 183(a) vessel. Rather the skiff would be a part of the Tradition as a unitary vessel. This is suggested in a remark contained in an 1894 Supreme Court decision addressing a separate question under § 183:

> The real object of [the limitation act] was to limit the liability of the vessel owners to their interest in the adventure. Hence, in assessing the value of the ship, the custom has been to include all that belongs to the ship, and may be presumed to be the property of the owner --- not merely the hull, <u>together with the boats</u>, tackle, apparel, and furniture, but all the appurtenances,

comprising whatever is on board for the
object of the voyage, belonging to the
owners, whether such object be warfare,
the conveyance of passengers, goods, or
the fisheries.

The Main v. Williams, 152 U.S. 122, 131 (1894)
(emphasis added).

Certainly no policy reason appears that would
support petitioner's attempt to limit its liability
to the value of the skiff. Most questions raised
by the plaintiff's complaint and the defendant's
limitation petition --- for example whether, as §
183 requires, the accident occurred without the
privity and knowledge of the shipowner, or whether
liability even exists --- remain for trial. With
respect to the proffered ad interim stipulation and
bond, however, Tradition Partnership will be
required to surrender the Tradition, with skiff, or
its value.

It is so ORDERED.