**In re WATERMAN STEAMSHIP CORPORATION.**

Civ. A. No. 91–1491.

United States District Court, E.D. Louisiana.

June 30, 1992.

---

## MEMORANDUM AND ORDER

SEAR, District Judge.

On February 9, 1991, a fire erupted in the engine room of the S/S Stonewall Jackson, killing six of the ship's crew. The representatives of the deceased crew members filed separate actions in state court and on April 17, 1992, Waterman Steamship Corporation and AmSouth Bank filed this limitation proceeding. Petitioners filed an ad interim stipulation for value pursuant to which they stipulated with their surety, St. Paul Fire & Marine Insurance Company, that the value of the S/S Stonewall Jackson and her pending freight was $7,852,780.00. Claimants previously filed a motion to increase security pursuant to 46 U.S.C. § 183(b), which provides that a limitation fund shall be increased by $420 per ton when the fund proves to be insufficient to satisfy the loss of life and bodily injury claims. By Memorandum and Order dated February 27, 1992, you denied this motion because the statute's clear preference is that § 183(b) should not be used until after trial on limitation unless there is a showing of a gross disparity between the asserted claims and the limitation fund, which there was not.

Claimants now have filed a motion to challenge the value of the limitation fund, not pursuant to § 183(b), but by contending that the value of the 89 LASH barges being carried aboard the S/S Stonewall Jackson at the time of the engine fire should be included in the fund. They also assert that the value of stores, bunkers, cash, and other appurtenances on board at the time of the incident also should be included in the value of the fund. Petitioners oppose this motion, arguing that challenging the value of the fund is premature and that the value of the LASH barges and appurtenances should not be included.

## ANALYSIS

As an initial matter, Waterman and AmSouth Bank (Petitioners) contend that a challenge to the value of the limitation fund is premature. They argue that pursuant to your Memorandum and Order dated February 27, 1992, the sufficiency of the limitation fund should not be considered absent a showing that there is a gross disparity between potential liability and the fund. Their argument is misplaced. Claimants are not challenging the sufficiency of the fund under § 183(b). They are not arguing that the value of the vessel and the vessel's freight requires a monetary supplement to satisfy potential liability. Instead, they are arguing that the value of the vessel and her freight is incorrect because certain barges were not included in the value. They are challenging the *appraisal* of the value of the fund, not the *sufficiency* of the fund to pay claims.

### I. *The LASH barges*

The determination of this motion requires an interpretation of the "single venture theory" or "flotilla doctrine" which provides that all vessels engaged in a common venture should be considered one vessel for limitation purposes.[1] Under this theory, the value of all vessels engaged in the venture must be surrendered to deter-

---

**1.** *Wirth Ltd. v. S/S Acadia Forest,* 537 F.2d 1272, 1283 (5th Cir.), *reh'g denied,* 541 F.2d 281, 282 (5th Cir.1976) (holding that LASH barges are "ships" as defined in the Carriage of Goods Sea Act).

mine the value of the limitation fund. The Fifth Circuit, in *Wirth Ltd. v. S/S Acadia Forest* explained the theory:

> Likewise, courts construing the ship-owners Limited Liability Act, 46 U.S.C.A. §§ 181–89, have held that when vessels are engaged in a common transportation enterprise they should often be considered one vessel for limitation purposes. In *Short v. The Columbia*, 9 Cir., 1896, 73 F. 226, the Court held in a case factually similar to ours that the barge and tug were one vessel for limitation of liability purposes. Similarly, in *Standard Dredging Co. v. Kristiansen*, 2 Cir., 1933, 67 F.2d 548, *cert. denied*, 1934, 290 U.S. 704, 54 S.Ct. 372, 78 L.Ed. 605, the Court held that the owner must surrender all those vessels which share in the execution of the venture, and the Court further stated that they were collectively viewed as one vessel.

> More recently, this Circuit in reliance on the single vessel theory held that the entire flotilla of barges engaged in a common maritime dredging operation should be surrendered for limitation of liability purposes (citations omitted).[2]

Whether the value of *LASH barges* and the mother ship all must be surrendered for purposes of determining the size of the limitation fund first was addressed by the Fifth Circuit in *Agrico Chem. Co. v. S/S Atlantic Forest*.[3] In this action for cargo damage, the Court in *Agrico* addressed the issue of the vessel owner's limitation of liability. After determining the vessel owner was entitled to limit its liability, the next issue for the Court was "what vessel or vessels and pending freight should be considered in determining the value that the carrier is not to exceed in paying the damages."[4] The court held that the value of the mother ship and the value of all the LASH barges, plus their pending freights must be included in the limitation fund. Thus, it would support claimants conten-

tion that the value of the LASH barges should be included here.

Petitioners argue that *Agrico* is not controlling because the late Judge Gordon was compelled to this conclusion by the dicta cited above in *Wirth*. They argue that Judge Gordon was misled by *Wirth* because he thought the holding in *Wirth* was that the limitation fund had to include the value of all LASH barges. This contention is weak. Although Judge Gordon may have given much weight to the dicta in *Wirth*, he based his holding also on "the line of jurisprudence adopting the single enterprise principle in Limitation of Liability matters."[5] Importantly, on whatever basis his holding, the *Agrico* opinion was not only affirmed, but expressly adopted, by the Fifth Circuit.[6]

Petitioners also argue that *Agrico* did not involve a Jones Act claim for personal injury or death, as in our case, and that in such a "pure tort" situation, the "flotilla doctrine" should not be applicable. In *Agrico*, Judge Gordon cited the 1933 decision by Judge Learned Hand in *Standard Dredging Co. v. Kristiansen*[7]:

> However, whatever may be thought of the law before 1927, *Sacramento Navigation Co. v. Salz*, 273 U.S. 326 [330–33], 47 S.Ct. 368, 370, 71 L.Ed. 663, settled it. True, that case arose under Section 3 of the Harter Act (46 U.S.C. § 192), but the Court expressly declared that the question was the same in cases of limitation. A tug and her barge in tow were treated as a single vessel, because owned in common and engaged in a common enterprise, and the doctrine of *The Columbia*, *supra* (C.C.A.) 73 F. 226, was used as the keystone of the reasoning. The Court thought *Liverpool, etc. Nav. Co. v. Brooklyn Eastern [Dist.] Terminal*, *supra*, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130, plainly distinguishable; it was concerned with 'a pure tort; no contractual

---

**2.** *Id.* at 1283.

**3.** 459 F.Supp. 638 (E.D.La.1978) (Gordon, J.), *aff'd*, 620 F.2d 487 (5th Cir.1980).

**4.** *Id.* at 651.

**5.** *Id.* at 652.

**6.** 620 F.2d 487 (5th Cir.1980).

**7.** 67 F.2d 548, 550–51 (2nd Cir.), *cert. denied*, 290 U.S. 704, 54 S.Ct. 372, 78 L.Ed. 605 (1933).

obligations were involved.' When they are, it is possible to regard an 'entire flotilla ... as one vessel for the purposes of the undertaking in which the common owner was engaged.' In that case the relevant inquiry is, 'what constituted the vessel by which the contract of transportation was to be effected.' In view of this language and of the use made of *The Columbia, supra* (C.C.A.) 73 F. 226, when the duty involves 'contractual obligations,' the whole flotilla embarked in the enterprise is the 'vessel'; a conclusion which would comprise not only the barge here, but the two attending tugs as well.

That the National Dredging Company's duty to Kristiansen 'involved contractual obligations' seems to us clear ... the form of the remedy is of no moment; the duty is raised out of the contract of service, and while it would of course be untrue to say that the master must, in fact, undertake its performance, he may not be charged with it, unless he accepts the servant in his employ ... when the duty violated, though imposed by law, presupposes at least the relation of master and servant, the owner must surrender all those vessels which share in the execution of the venture; collectively they are 'such vessel' within R.S. § 4283 (46 U.S.C.A. § 183).

■ A "pure tort" situation refers to one in which an injury is to a third person to whom the shipowner owes no duty based upon consent.[8] Judge Learned Hand, in *Kristiansen,* explained:

> If for example, Kristiansen [an injured seaman suing the shipowner on whose barge he had been employed] had mishandled the barge's anchor and set her adrift, so that she fouled another barge nearby, or injured someone on board, we

understand that the barge alone would have to be surrendered.[9]

In the instant action, the decedents on whose behalf the claimants have sued had a contractual master/servant relationship with Waterman Steamship Corporation. Thus, this is not a situation contemplated under the "pure tort" exception to the flotilla doctrine. Instead, a contractual relationship existed by which the limitation fund includes all vessels of common ownership which share in the execution of the contractual venture.[10]

■ If the petitioners are contending that the doctrine is only applicable in cargo collision cases, and not in tortious injury cases, this contention also in incorrect. Numerous Fifth Circuit cases have found the necessary contractual link in the injured or killed seaman's employment contract in order to invoke the flotilla or single enterprise theory including *Sabine Towing Co., Inc. v. Brennan,*[11] *In re Drill Barge No. 2,*[12] and *Cenac Towing Co. v. Terra Resources.*[13] The Court in *In re Drill Barge No. 2* stated:

> As we have pointed out, the District Judge held that [petitioner] was performing its contract with the flotilla of vessels working with each other. It is also clear that claimants here were employees of petitioner and that the contractual relationship of master and servant existed between them. The circumstances, therefore, compel affirmance of the District Judge's ruling that the value of [the petitioner's] entire flotilla must be surrendered in this case under the Petition for Limitation.[14]

Thus, the doctrine is applicable to a Jones Act injury action, such as ours, when a master/servant relationship exists.

---

**8.** *Brown & Root Marine Operators, Inc. v. Zapata Off–Shore Co.,* 377 F.2d 724, 727 (5th Cir. 1967).

**9.** 67 F.2d at 550.

**10.** *Liverpool, Brazil & River Plate Steam Nav. Co. v. Brooklyn Eastern Dist. Term.,* 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130 (1919).

**11.** 72 F.2d 490 (5th Cir.), *cert. denied,* 293 U.S. 611, 55 S.Ct. 141, 79 L.Ed. 701 (1934), *modified,* 85 F.2d 478 (5th Cir.1936).

**12.** 454 F.2d 408 (5th Cir.), *cert. denied, Cross Contracting Co. v. Law,* 406 U.S. 906, 92 S.Ct. 1610, 31 L.Ed.2d 816 (1972).

**13.** 734 F.2d 251 (5th Cir.1984).

**14.** 454 F.2d at 411–12.

Additionally, petitioners contend that it would be improper to apply the flotilla doctrine in this instance and require the fund to include the value of the eighty-nine innocent LASH barges because they were passive, and were not involved in the casualty. They argue that in the principal cases on which claimants rely, *In re Drill Barge No. 2* and *Agrico,* the injury occurred on an active barge and not on the accompanying mother ship. However, they cite no support for the contention that the barges must be active and instead, it appears that it is implicit in the cited caselaw that all vessels engaged on the common venture are to be considered, and not only those which contributed to the injury. The doctrine by its very definition contemplates the inclusion of all vessels and barges on a single venture, and does not limit itself only to the vessel on which the injury occurred. In fact, this is the purpose of the doctrine.

Finally, petitioners contend that the limitation fund cannot include the value of the LASH barges because 46 U.S.C. § 183(f) provides that "seagoing vessels" is defined for purposes of subsection (b) *not* to include barges. However, § 183(b) is not relevant to this motion. Claimants are not challenging the sufficiency of the fund, but are challenging the valuation of the fund. Thus, § 183(f) is not controlling to our inquiry.

In this case, the flotilla consisted of ninety vessels, including the S/S Stonewall Jackson and her eighty-nine LASH barges, all owned or operated by Waterman as owner pro hac vice in the conduct of Waterman's marine transportation business. A master/servant relationship existed between all six deceased seamen and their employer, Waterman Steamship Corporation. Under these circumstances, the limitation fund should include the value of the LASH barges carried aboard the S/S Stonewall Jackson at the time of the inci-

dent. This value is estimated to be $3,639,-500.[15]

## II. *The S/S Stonewall Jackson's Appurtenances*

In *The Main v. Williams,*[16] the United States Supreme Court stated:

> The real object of this [Limitation] act ... was to limit the liability of vessel owners to their interest in the *adventure;* hence, in assessing the value of the ship, the custom has been to include all that belongs to the ship, and may be presumed to be the property of the owner, not merely the hull, together with the boats, tackle, apparel, and furniture, but all the appurtenances comprising whatever is on board for the object of the voyage, belonging to the owner, whether such object be warfare, the conveyance of passengers, goods, or the fisheries.

That appurtenances have been included in the value of the limitation fund has occurred as recently as 1970 in *Complaint of Pacific Far East Line,*[17] in which it was held that removable refrigerated cargo containers, not assigned to any particular vessel except by coincidence for a particular voyage, were to be valued and included in the limitation fund as "appurtenances." The court held that they should be included because they were for the object of the voyage and were part of what the owner risked on the vessel for the object of the adventure. The court also analogized including the value of the appurtenances to the "flotilla" doctrine.

Additionally, Benedict's admiralty treatise notes that "[a]ppurtenances, e.g., the traveling derrick of a scow or the outfit of a whaler, essential to the service on which the vessel was engaged at the time of the happening of the accident, are a part of the value to be surrendered or appraised."[18] The treatise also notes that the value of the ship's stores must be in-

---

**15.** Claimants' exhibit 4.

**16.** 152 U.S. 122, 131, 14 S.Ct. 486, 488, 38 L.Ed. 381 (1894).

**17.** 314 F.Supp. 1339 (N.D.Cal.1970), *aff'd,* 472 F.2d 1382 (9th Cir.1973).

**18.** 3 *Benedict on Admiralty,* § 63, p. 7–22 (7th ed. 1983).

cluded in the appraisal, but not the value of spare parts kept on shore.

Petitioners argue that the ad interim stipulation of the vessel was prepared by Mr. Harry Ottaway of Francis A. Martin and Ottaway, Inc., a world-renown and highly experienced ship appraiser, whose ship appraisals and appraisal methods have been accepted by the courts in limitation of liability proceeding. They contend that his valuation represented the fair market value of the ship in sound condition less the cost of necessary repairs, and that the methodology employed in forming his opinion is based on the application of the valuation criteria customarily accepted in the world market place for establishing a vessel's "fair market value." Petitioners admit that the value of the ship's stores, bunkers and monies on board the ship at the time of the casualty were not included in the limitation fund. However, they argue that the fair market value of the vessel does not include the value of such appurtenances.[19]

Regardless of Mr. Ottoway's method of valuation, and that as a matter of course, appraisals from his office do not include the value of bunkers,[20] the law indicates that appurtenances should be included in the limitation fund. Thus, this value should also be added to the limitation fund. Accordingly,

IT IS ORDERED that claimants' motion is GRANTED.

---

**19.** Affidavit of Mr. Ottoway, Petitioner's exhibit A.

**20.** Report of the Annual Meeting of the Association of Average Adjusters of the United States held on October 3, 1985, p. 3, Petitioner's exhibit B.