In the Matter of the Complaint of TOM QUINN COMPANY, INC., Owner Pro Hac Vice of the Motor Vessel MISS LUCY, in an Action for Exoneration from or Limitation of Liability.

No. 92–419–CIV–J–10.

United States District Court,
M.D. Florida,
Jacksonville Division,
In Admiralty.

Nov. 17, 1992.

---

Victor M. Halbach, Jr., Alan K. Ragan, Jacksonville, Fla., for plaintiff in limitation.

Joseph P. Milton, Eric L. Leach, Jacksonville, Fla., for claimants.

## ORDER

SNYDER, United States Magistrate Judge.

This cause is before the Court on Claimants, Glenn Jackson and Nancy Jackson's Motion to Increase Security and Supporting Memorandum of Law (hereinafter Motion), filed September 22, 1992, which seeks "an Order requiring Plaintiff to increase the amount of security posted with the Court." Claimants contend plaintiff has "grossly underestimated the value of the vessel by utilizing a narrow and incorrect definition of the term 'vessel.' " *Id.* at 1. Plaintiff's Memorandum of Law in Response to Claimants' Motion to Increase Security (hereinafter Response), was filed October 6, 1992. A hearing on the Motion was held November 4, 1992.[1]

### *Background*

Plaintiff Tom Quinn Company, Inc. (hereinafter Quinn) filed the instant action seeking exoneration from or limitation of liability for "loss, injury, death, expense, damage or any claim whatsoever" incurred during a November 2, 1991, excursion by the M/V Miss Lucy, a tugboat chartered by Quinn. The facts, for purposes of the Motion before the Court, are discerned from the pleadings and hearing as follows.[2] Claimant Glenn Jackson was employed by Quinn as tug captain aboard the Miss Lucy, and was involved in repair operations on the B.B. McCormick Bridge, which spans the Intracoastal Waterway at Interstate 90 in Jacksonville, Florida. His duties included piloting the tug to and from the job site, thereby shuttling workers and navigating a barge in and out of the channel at the

---

1. At the hearing, claimants agreed they were not contesting the appraised value of the tugboat M/V Miss Lucy. Rather, their argument is that plaintiff has underfunded the limitation fund by failing to include the value of an unnamed barge attached to the Miss Lucy at the time of the alleged accident.

2. During the hearing, counsel for Quinn made reference to a deposition by Mr. Argueta. However, no such deposition appears in the Court file; thus, it was not considered by the Court.

beginning and end of each work day. On the day in question, Mr. Jackson piloted the Miss Lucy from the piers at Beach Marine on the Intracoastal Waterway to the B.B. McCormick Bridge. Part of the operation that day involved lifting a bridge timber[3] that was laying in the water. As the bridge timber was too heavy to lift manually, it was to be lifted by use of a crane located on the barge. According to claimants, Mr. Jackson was advised that Quinn "did not have the proper equipment necessary for the mechanical crane ... to reach one of the bridge timbers located on the bridge fender system", and was asked by the project supervisor, George Argueta,[4] "to manually lift one of the bridge timbers so that it would attach to the crane on one end." Motion, Affidavit of Glenn C. Jackson, Jr., ¶¶ 7, 8. Mr. Jackson claims he attempted to lift the bridge timber and, in the process, injured his lower back. *Id.* ¶ 9.

Quinn denies that Mr. Jackson attempted to lift the bridge timber and injured his back, and seeks exoneration from or limitation of liability pursuant to 46 U.S.C.App. § 183(a) (1988), which provides in relevant part:

> The liability of the owner of any vessel, whether American or foreign, for any ... act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

A charterer is deemed the owner of a vessel for purposes of § 183. *See id.* § 186. Based on an appraisal by an accredited marine surveyor, *see* Affidavit of Value of Donna M. Summerlin, filed May 4, 1992, Quinn posted a surety in the amount of $30,000, which represents the appraised value of the tugboat. *See* Ad Interim Stipulation for Value and Bond for Costs, filed May 27, 1992. Claimants contend the amount posted is inadequate because the plaintiff failed to include the value of a barge attached to the Miss Lucy at the time of the accident "as a single unit." Motion at 1–2. Quinn maintains the limitation fund "should include either the value of the vessel or the value of the barge, but not both." Response at 4.

### Discussion

■ In support of its position, Quinn cites Justice Holmes' opinion for the Court in *Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn Eastern District Terminal,* 251 U.S. 48, 53–54, 40 S.Ct. 66, 66–67, 64 L.Ed. 130 (1919), which read the term "vessel" as used in the predecessor to § 183 as including only the "actively responsible vessel" and not other ships or barges attached thereto. As Quinn recognizes, however, this literal reading of vessel has not been uniformly applied through the years. In *Sacramento Navigation Co. v. Salz,* 273 U.S. 326, 332, 47 S.Ct. 368, 370–71, 71 L.Ed. 663 (1927), the Court read *Liverpool* narrowly as applying only in "pure tort" situations where "no contractual obligations [are] involved." Where the cause of action is for loss of cargo being transported pursuant to a shipping contract, the entire flotilla—in that case a tug and the barge it was towing—engaged in the act of shipping can be regarded as the "vessel." *Id.; see also Patton–Tully Transportation Co. v. Ratliff,* 715 F.2d 219, 222 (5th Cir.1983) (per curiam) (holding "the limitation fund liability of a defendant shipowner may be increased to include his interest in the value of all vessels engaged in a common enterprise or venture with the vessel aboard which the loss or injury was sustained."). This is what is commonly referred to as the flotilla doctrine.

---

3. Claimant Glenn Jackson described a bridge timber as "a rectangular piece of wood used to provide support for the bridge fender system." Claimants, Glenn Jackson and Nancy Jackson's Motion to Increase Security and Supporting Memorandum of Law, filed September 22, 1992, Affidavit of Glenn C. Jackson, Jr., ¶ 7.

4. There is some confusion as to the proper spelling of this name—Mr. Jackson spells it Arqueto whereas Quinn spells it Argueta. The Court uses the latter spelling on the assumption Quinn is in the better position to know since it employs the individual in question.

The flotilla doctrine has not been limited to cases involving shipping contracts. At least since *Standard Dredging Co. v. Kristiansen*, 67 F.2d 548 (2d Cir.), *cert. den*, 290 U.S. 704, 54 S.Ct. 372, 78 L.Ed. 605 (1933), the doctrine has been applied as well to personal injury claims by employees against employer/owners. 67 F.2d at 551. The theory behind this extension is the contractual relationship that exists between a master and his servant. *See id.; see also In re Drill Barge No. 2*, 454 F.2d 408, 412 (5th Cir.), *cert. denied*, 406 U.S. 906, 92 S.Ct. 1610, 31 L.Ed.2d 816 (1972); *In re Waterman Steamship Corp.*, 794 F.Supp. 601, 604 (E.D.La.1992). The rationale for applying the flotilla doctrine in this context has been explained as follows:

> As a new question it is hard to see why the shipowner's liability should be broader when it presupposes a consensual relation with the claimant than when it rests upon the invasion of the interest of a person with whom the owner has had no preceding relation. However, it is at least doubtful whether the motives that originally lay behind the limitation [of liability] are not now obsolete; and certainly we should now have no warrant for extending its scope, when the liability is for personal injury arising from the shipowner's fault.

*United States Dredging Corp. v. Krohmer*, 264 F.2d 339, 341 (2d Cir.), *cert. denied*, 360 U.S. 932, 79 S.Ct. 1452, 3 L.Ed.2d 1545 (1959).

It is undisputed that claimant Glenn C. Jackson was an employee of Quinn and was involved in the bridge project at the time of his alleged injury. *See* Complaint in Admiralty for Exoneration From or Limitation of Liability (hereinafter Complaint), filed May 4, 1992, at 3. Thus, there is a contractual employer-employee relationship sufficient to invoke the flotilla doctrine. The question remains, however, how that doctrine applies in this case.

■ In determining whether a particular vessel is part of the "common venture," some courts look to whether it is "necessary to the performance of the contract." *In re North American Trailing Co.*, 763 F.Supp. 152, 163 (E.D.Va.1991); *see also United States Dredging Corp. v. Krohmer*, 264 F.2d at 341. Other courts look to a three-part test: (1) common ownership; (2) common enterprise; and (3) single command. *Valley Line Co. v. Ryan*, 771 F.2d 366, 376 (8th Cir.1985); *Cenac Towing Co. v. Terra Resources, Inc.*, 734 F.2d 251, 254 & n. 4 (5th Cir.1984).

■ Under the first test, the barge would appear to be "necessary to the performance" of the bridge repair contract: the barge was the site of the crane used to repair the bridge. Although Quinn represented that the crane could have been placed on the bridge itself, this seems unlikely as counsel for Quinn candidly admitted that placing the crane on the bridge would block traffic. Thus, the value of the barge should be included in the limitation fund under the "necessary to the performance of the contract" test.

Although a close call, the barge also would appear to be part of the limitation fund under the three-part test of *Valley Line* and *Cenac Towing*. Clearly, there is an identifiable common enterprise under these facts: that of repairing the B.B. McCormick Bridge. Both the tug and the barge were involved in this enterprise—the tug transported the barge and the workers to and from the bridge repair site each day, and the barge was the site of the crane used in the operation. Motion, Affidavit of Glenn C. Jackson, Jr., ¶¶ 3, 7. Secondly, there appears to be common ownership. Quinn asserts this element is "questionable," but does not elaborate any further. It is admitted "[t]he barge was under Argueta's command." Response at 8. Moreover, Quinn maintains the limitation fund "should include either [the value of] the Miss Lucy or the barge, but not both." *Id.* Accordingly, Quinn has essentially conceded it is the owner of the barge for purposes of § 183. Thus, the only potential element in dispute in this case is that of single command.

Initially, it is noted that "single command" apparently was not identified as an element of the flotilla doctrine until fairly recently. One of the earliest references to

the phrase in this context occurs in *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.,* 377 F.2d 724, 727 (5th Cir. 1967). In that case, the district court had invoked the flotilla doctrine and ordered the surrender of two vessels in addition to the barge already surrendered, finding:

> all three of the vessels were owned by the same person ... and all were engaged at the time of the collision in a common venture or enterprise ... and each of said vessels was playing a necessary and important part in the work, and all of said vessels were under a single command, and all of said vessels contributed in some degree to the collision in question.

*In re Brown & Root Marine Operators, Inc.,* 267 F.Supp. 588, 592 (S.D.Tex.1965). On appeal from this order, the former Fifth Circuit held, "[u]nder these conditions we find no error in the holding below...." 377 F.2d at 727. Nowhere in either decision, however, is it stated that the district court's finding of a single command was necessary to reach the result.

In any event, the element of single command is present in this case. Quinn was the contractor on the bridge repair project, and George Argueta was the project supervisor. Claimant Glenn Jackson was employed to "operat[e] the tugboat, 'Miss Lucy', to transport workers and supplies to and from the jobsite, and navigat[e] a work barge joined to the tugboat." Motion, Affidavit of Glenn C. Jackson, Jr., ¶ 3. According to Mr. Jackson's affidavit, "Mr. Arqueto [sic] was the highest ranking officer of Tom Quinn Company, Inc. present on the job site at the time of the accident." *Id.* ¶ 4. Even if the Court credits Quinn's allegation that Mr. Argueta was unable to operate the tugboat, there is no dispute he was the project supervisor on this job site, and that Mr. Jackson was employed by Quinn to operate the tug. Accordingly, both the tug and barge were under the single command of Mr. Argueta on behalf of Quinn for the duration of this project.

Quinn argues that because Mr. Jackson was the tug captain, he was in charge of the Miss Lucy, whereas Mr. Argueta was in command of the job site and, thus, the barge. However, Quinn's reliance on the title "tug captain," and the dictionary definition of "captain", *see* Response at 7–8, is misplaced. Nowhere is it shown that Mr. Jackson had all the powers and duties implied by the dictionary definition of "captain." Thus, it is not clear how that definition is relevant. In determining the application of the flotilla doctrine under the circumstances of this case, the better approach is to rely on the practical realities of the situation. The reality is that Mr. Jackson was hired because he had the necessary licenses to operate the tugboat, while Mr. Argueta was supervisor for the entire project. Accordingly, both the tug and barge were under the single command of Mr. Argueta for purposes of the flotilla doctrine.

In light of the foregoing, it is hereby

ORDERED:

Claimants' Motion to Increase Security is GRANTED to the following extent as required by Local Rule 7.06, United States District Court, Middle District of Florida:

1. Plaintiff shall identify the barge which is the subject of the Motion;

2. an appraisal shall be conducted of the barge and its value thereby determined;

3. the parties shall have three (3) working days from the date of receipt of this Order to file a written stipulation to an appraiser—if no such stipulation is filed in the allotted time, the Court shall enter an Order appointing an appraiser;

4. the appraiser so stipulated or appointed shall conduct an appraisal of the barge forthwith, and shall file same with the Clerk and serve a copy on the moving party and the plaintiff—claimants shall bear the cost of the appraisal;

5. the parties shall have ten (10) days from the filing of the appraisal to file an objection to the same;

6. if no objection to the appraisal is filed, plaintiff shall file in a timely fashion an amended ad interim stipulation in the

amount of $30,000 plus the appraised value of the barge and interest.

DONE AND ORDERED.