In the matter of the Complaint of SEASPAN INTERNATIONAL, LTD., owner of the tug Seaspan Queen, for Exoneration from or Limitation of Liability.

No. C00–1411R.

United States District Court,
W.D. Washington
at Seattle.

June 26, 2001.

James P Moynihan, Bauer, Moynihan & Johnson, Seattle, WA, Timothy Karl Borchers, Christopher W Nicoll, Cozen O'Connor, Seattle, WA, for Seaspan International, Ltd.

Timothy Karl Borchers, Christopher W Nicoll, Cozen O'Connor, Seattle, WA, for Seaspan Queen.

C William Bailey, Mills Meyers Swartling, Seattle, WA, for Summit Technology.

Jeffrey C. Jones, Krutch Lindell, Seattle, WA, Kevin Patrick Sullivan, Sullivan & Thoreson, Seattle, WA, for Donald Clovis.

Mary Alice Theiler, Theiler, Douglas, Drachler & McKee, Seattle, WA, Thomas Frank Paul, Legros, Buchanan & Paul, Seattle, WA, Jeffrey C. Jones, Krutch Lindell, Seattle, WA, for Lawrence Clovis.

Thomas Frank Paul, Legros, Buchanan & Paul, Seattle, WA, Jeffrey C. Jones, Krutch Lindell, Seattle, WA, for Jody Clovis.

Mary Alice Theiler, Theiler, Douglas, Drachler & McKee, Seattle, WA, Thomas Frank Paul, Legros, Buchanan & Paul, Seattle, WA, Jeffrey C. Jones, Krutch Lindell, Seattle, WA, for Derek A.

Vincent R. Larson, Aryeh Y Brown, Riddell Williams P.S., Seattle, WA, for Crowley Marine Services, Beacon Insurance Company Ltd, Signal Mutual Indemnity.

C Steven Fury, Fury & Bailey, Seattle, WA, for Spencer Clovis.

Paul J. Delay, Thompson & Delay, Seattle, WA, for Miranda Parks.

ORDER GRANTING CLAIMANTS' MO-
TION TO ADD THE VALUE OF
THE BARGE HARRY A. MERLO
AND MOTION TO COMPEL AND
DENYING CLAIMANTS' MOTION
FOR PARTIAL SUMMARY JUDG-
MENT

ROTHSTEIN, District Judge.

THIS CASE is brought by the estate of Donald Clovis and Lawrence Clovis ("claimants") v. Seaspan, International, Ltd. ("Seaspan, Ltd."). This matter comes before the court on: claimants' joint motion (1) to include the value of the barge Harry A. Merlo in the limitation fund; (2) to compel joinder of Seaspan International, Inc. ("SII"); and (3) for partial summary judgment. Having reviewed the papers filed in support of and opposition to these motions, the court finds and rules as follows:

## I. BACKGROUND

On February 22, 2000, an allision occurred when the tug Seaspan Queen attempted to moor the barge Harry A. Merlo at the loading ramp at Pier 15½ in Seattle, Washington. At the time, the Merlo did not have its own power supply or crew.[1] The Seaspan Queen was piloted by Captain Ian Gravlin who controlled the Merlo's movement from the Seaspan Queen's pilothouse. Gravlin, however, could not see the loading ramp, and therefore Robert Littlejohn, a mate of the Seaspan Queen, boarded the Merlo to radio directional and engine instructions to Gravlin. Two deck-hands from the Seaspan Queen and one crew member from the Sea King boarded the Merlo to handle towing lines and mooring wires.

During the docking procedure, Littlejohn, confused as to the position of the Seaspan Queen in relation to the Merlo, radioed "full ahead" in an attempt to halt the Merlo's progression toward the loading ramp. However, the "full ahead" instruction was incorrect; the appropriate instruction was "full astern."

Littlejohn almost immediately realized his error and attempted to correct himself by radioing "full astern." The Merlo's movement toward the loading ramp continued and the Merlo allided with a floatation tank on the eastern side of the ramp, placing two holes in the tank and causing it to flood.

There is some dispute as to what happened immediately following the allision. Seaspan, Ltd., owner of the Seaspan Queen, claims that an unnamed dockhand on the loading ramp told the crew to position the barge under the ramp to help stabilize it. Seaspan, Ltd. maintains that before the crew was able to position the barge under the ramp the crew was told to continue mooring the Merlo because the ramp had stabilized. Claimants contend, however, that the Merlo was underneath the ramp and that the Seaspan Queen crew decided to remove the barge and continue mooring.

Donald and Lawrence Clovis, employees at the Pier 15½ loading ramp, were present during the allision. Immediately after the allision, the Clovises evacuated the ramp and returned approximately twenty minutes later when it appeared to be stabilized. Shortly after the Clovises returned to the ramp it capsized throwing Donald and Lawrence Clovis into the water.

Crowley Maritime Services, Inc. ("Crowley"), a joint venturer in the loading ramp and the Clovises' employer, has a dispatch log which shows that emergency help was called at 9:29 a.m. The Seattle Fire Department arrived at 9:38 a.m. but the fire

---

1. The Seaspan Queen was aided by an assist tug, the Sea King. The Sea King was under the control of the crew of the Seaspan Queen and the value of the Sea King is not at issue.

department did not have scuba gear. The Port of Seattle Police arrived at 9:40 a.m. but they also did not have scuba gear. Finally, the Seattle Police Department, which had the only scuba gear, arrived at 10:00 a.m. Additionally, the Sea King's log shows that at 9:37 a.m. a man was spotted in the water and that a man was recovered from the water and taken to shore at 9:45 a.m.

Donald Clovis drowned in the accident. Lawrence Clovis suffered a severe anoxic brain injury caused by near drowning. Claimants contend that Lawrence suffered other physical injuries including a punctured lung, two cracked ribs, and lacerations and bruises on his body, and that Lawrence also developed intubation pneumonia following his treatment. The claimants contend further that the resulting anoxia has caused both a cognitive deficit and physical disabilities and that as a result of his injuries, Lawrence will require 24–hour supervision for the remainder of his life.

The ownership structures and contractual relationships of the parties are essential to the parties' pending motions. Seaspan, Ltd. contracted with Union Pacific Railroad to tow the Merlo to Pier 15 ½. During the course of towage the Merlo was under bare boat charter to SII, a wholly owned subsidiary of Seaspan, Ltd. The loading ramp at the pier is operated as the joint venture "Hydro–Span." The Hydro–Span joint venture members are Crowley and SII.

Under the terms of the joint venture agreement, Crowley and SII each has the right to use the loading ramp and each contributes its proportionate share of the operating costs. The joint venture agree-

ment entitles SII and its shareholder Seaspan, Ltd. to use the loading ramp and allocates the cost for such use to SII.

## II. DISCUSSION

### A. Motion to Add the Value of the Merlo to the Limitation Fund

■ Pursuant to 46 U.S.C.App. § 183, a ship owner's liability shall not exceed the value of the owner's interest in the vessels involved in the casualty. The full value of the ship owner's interest is what is referred to as the "limitation fund." If there is no contractual relationship between the injured and offending party, the accident is a pure tort and only "offending vessels" will be included in the limitation fund. *Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn E. Dist. Terminal,* 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130 (1919). A vessel that is the "dominant mind" during an injury-causing incident qualifies as an offending vessel. *Dow Chemical Co. v. Tug Thomas Allen,* 349 F.Supp. 1354 (E.D.La.1972) (*"Tug Thomas Allen"*).

Donald Clovis's estate and Lawrence Clovis have filed this joint motion to add the value of the barge Merlo to the limitation fund.[2] Claimants argue that both the Seaspan Queen and the Merlo should be included in the limitation fund because both are offending vessels that caused the Clovises' injuries. Alternatively, claimants argue that the value of the Merlo should be added to the limitation fund because (1) the Clovises are part of a consensual relationship since the joint venture Hydro–Span amounts to a contractual relationship between Crowley and "Seaspan;"[3] or (2) the Seaspan Queen and the Merlo consti-

---

**2.** Crowley, not currently a party, has filed a memorandum in support of claimants' motion to add the value of the Merlo to the limitation fund and claimants' motion for partial summary judgment.

**3.** Claimants refer to "Seaspan" without differentiating between Seaspan, Ltd. and SII.

tute a "flotilla," since at the time of the allision the Seaspan Queen and Merlo were commonly owned and controlled, and engaged in a single enterprise.

### 1. Whether the Merlo Had the Dominant Mind

■ The claimants contend that the Merlo had the dominant mind during the docking procedure and therefore was an offending vessel that should be added to the limitation fund. According to claimants, the Merlo had the dominant mind because it was necessary for Littlejohn to board the Merlo to command the docking procedure. The parties discuss at length three cases which are instructive although each differs in its facts from the case before the court. To support their position, claimants cite Tug Thomas Allen. In Tug Thomas Allen, the barge and tug had separate crews. The master of the barge knowingly directed the tug through a dangerous area causing the barge to strike a gas line. The court included the barge in the limitation fund, finding that the barge was the dominant mind because the barge's separate crew directed both the tug and the barge from the barge. The tug was included in the limitation fund because the tug's own crew was negligent in following the barge's orders.

Seaspan, Ltd. claims that the Merlo could not have been the dominant mind because it was a "dumb barge" meaning that it was only a passive instrument in the injury-causing event, and therefore only the Seaspan Queen should be included in the limitation fund. To support its contention, Seaspan, Ltd. relies on Liverpool. In Liverpool, a tug proceeded up the East River with a barge lashed to its side. The barge, which did not have power or crew, hit a moored vessel. The court found that the barge was a passive instrument and could not be included in the limitation fund merely because it was attached to the responsible vessel, the tug.

Unlike the instant case, in Liverpool, the towing operation was controlled entirely from the tug. The tug's crew never set foot on the barge. In this case, the Seaspan Queen stationed crew on the Merlo to secure towing lines and mooring wires. Littlejohn, the docking master, directed the docking operation from aboard the Merlo, radioing engine orders and directional instructions to the tug which had no view of the docking operation.

In Sturgis v. Boyer ("The Hector"), the Supreme Court found that only the tug, and not the tow, was liable, even though the tug master boarded the tow to give orders during the collision. 65 U.S. 110, 24 How. 110, 16 L.Ed. 591 (1860). In The Hector, the unmanned ship was lashed to the starboard side of the tug, and both vessels were propelled by the steam-power of the tug. The flotilla collided with a lighter because the tug's crew did not see the lighter in the ship's path in enough time to slow the ship's progression. Just before the collision, the master of the tug, having been made aware of the approaching lighter, boarded the towed ship and gave all subsequent orders from aboard the ship's deck. However, nothing suggests that in The Hector it was necessary for the tug master to leave the tug and board the ship. Furthermore, in The Hector the collision was not caused when the tug master boarded the ship and gave orders, but was a product of the tug's failure to provide proper lookouts.

In this case it is undisputed that Littlejohn and crew members from the Seaspan Queen and Sea King boarded the Merlo to perform the docking procedure because it was impossible to see the ramp from aboard the tug. Gravlin stated "it is customary and, in my opinion prudent, to position members of the tug's crew on the barge to secure towing lines, to secure mooring wires, and to relay engine order

and directional instructions." Littlejohn agreed, stating "a crew member from the towing tug *must* go on the barge to advise the helmsman whether to speed up or slow down and which direction to steer." Since the Merlo did not have a crew of its own, it was necessary that the Seaspan Queen's crew board the Merlo to conduct the docking procedure.

Because the docking operation was, of necessity, controlled from the Merlo, and because the Merlo was the injury-causing vessel, the court finds that the Merlo was the dominant mind when the allision occurred, and therefore finds the value of the Merlo should be included in the limitation fund.

**B.** *Motion to Compel Joinder of Seaspan International, Inc.*

■■■ Under Fed.R.Civ.P. 19, a party is necessary to the action and will be joined if the party is subject to service, joining the party will not dispose of the court's jurisdiction, and complete relief cannot be had in the party's absence. The court has wide discretion in determining whether to compel joinder of a party. *Moore v. Knowles*, 482 F.2d 1069, 1075 (5th Cir.1973). Claimants move to compel joinder of SII because it was the bare boat charterer, and therefore the owner *pro hac vice*, of the Merlo when the allision occurred. *See, e.g., Haluapo v. Akashi Kaiun, K.K.*, 748 F.2d 1363, 1364 (9th Cir. 1984) (finding that a bare boat charter renders the charterer the owner *pro hac vice*). Alternatively, claimants argue that SII is a necessary party because it is the alter ego of Seaspan, Ltd. Claimants have shown that SII is subject to service of process, and Seaspan, Ltd. concedes that the court has jurisdiction over SII.

Seaspan, Ltd. argues that SII should not be joined because (1) claimants' motion is

contingent on a finding that the value of the Merlo be added to the limitation fund, and (2) even if the Merlo is added to the fund, the court could find that Seaspan, Ltd., not SII, was the actual charterer of the Merlo, and order Seaspan, Ltd. to post bond for the value of the Merlo rendering SII an unnecessary party. As the court finds that the value of the Merlo shall be added to the limitation fund, Seaspan, Ltd.'s first contention is moot. To support its second argument, Seaspan, Ltd. cites *Torch, Inc. v. Alesich* for the contention that the party exercising exclusive possession, control, and command over a vessel is the owner *pro hac vice.* 148 F.3d 424, 426 (5th Cir.1998).

Whether Seaspan, Ltd. or SII is the owner *pro hac vice*, the court is persuaded that SII's interest in the Merlo as the bare boat charterer renders SII a necessary party, and therefore compels joinder of SII.[4]

**C.** *Motion for Partial Summary Judgment*

Claimants request a declaratory judgment that Seaspan, Ltd. proximately caused and is liable for the Clovises' injuries. Seaspan, Ltd. opposes the motion for partial summary judgment, stating that there are genuine issues of fact as to causation, and that the motion is premature. Claimants also request a declaration that the rule of joint and several liability renders Seaspan, Ltd. fully responsible for all of the Clovises' injuries. Seaspan, Ltd. contends that the rule of joint and several liability should not apply because it is inconsistent with the maritime rule of comparative fault, and that if it is entitled to limit liability, Seaspan, Ltd. cannot be made to pay more than the amount in the limitation fund.

4. Joinder is also warranted because SII is a necessary party to the determination of whether the corporate entity should be disregarded.

### 1. Standard for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When deciding a motion for summary judgment, the court must assume all issues of fact in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If genuine issues of material fact remain, summary judgment is not appropriate. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The court may issue summary judgment on all claims, only some of the claims, or even parts of claims, Fed.R.Civ.P. 56(a), (b), and may grant summary judgment as to specific issues to narrow the issues for trial. *See, e.g., First Nat'l Ins. Co. v. FDIC*, 977 F.Supp. 1051, 1055 (S.D.Cal.1997).

### 2. Liability and Proximate Cause

■ In response to claimants' motion for partial summary judgment, Seaspan, Ltd. contends that there are questions of fact as to causation and that it does not have all the information necessary to its defense. Specifically, none of the parties have taken depositions.

The court finds that genuine issues of material fact exist rendering partial summary judgment as to liability and proximate cause inappropriate. In an effort to assist the parties in their preparation for trial, the court will, however, address some of the issues raised by the parties for trial.

Claimants argue that Seaspan, Ltd. is negligent for the four following reasons: (1) Seaspan, Ltd.'s admissions amount to negligence; (2) Seaspan, Ltd. failed to comply with statutory safe speed requirements and is therefore negligent pursuant to the Pennsylvania Rule, which mandates that if, at the time of a collision, a ship violates a statute that is intended to prevent collisions, the burden shifts to the ship to show that her fault could not have been the cause of the injury; (3) where a moving vessel allides with a fixed object, there is a presumption of negligence against the moving vessel; and (4) the doctrine of res ipsa loquitur establishes Seaspan, Ltd.'s negligence.

In response to claimants' arguments, Seaspan, Ltd. contends generally that the circumstances of the allision amount to an "unavoidable accident." Specifically, Seaspan, Ltd. contends the following: that (1) Seaspan, Ltd. did not admit negligence; (2) there are insufficient facts to conclude that the Pennsylvania Rule applies; (3) Seaspan, Ltd. has rebutted the presumption of negligence against moving vessels because Crowley failed in his duty to warn about the "hidden" floatation tanks; and (4) the doctrine of res ipsa loquitur does not apply because the cause of the incident cannot be proven.

#### a. Whether Seaspan, Ltd's Admissions Establish Negligence

■ Claimants contend that Seaspan, Ltd. should be found negligent as a matter of law because Seaspan, Ltd. admits that Littlejohn gave the wrong docking command. To support their assertion that Littlejohn's "full ahead" command was "admittedly negligent, if not reckless," claimants cite the United States Coast Guard report. The section of the Coast Guard report claimants cite says that the "full ahead" command was erroneous, but does not establish that the command amounted to negligence or recklessness. Additionally, the Coast Guard report indicates that a major factor in the Clovises' injuries was their decision to return to the ramp. Therefore, the court finds that Seaspan, Ltd.'s admissions of error are not tantamount to an admission of negligence.

### b. Presumption of Negligence

█ Claimants point out that there is a presumption that a moving vessel is at fault when the moving vessel allides with a fixed structure. *See, Wardell v. Dep't of Transp., Nat'l Safety Bldg.*, 884 F.2d 510, 512 (9th Cir.1989) (finding that a moving vessel is "responsible for her actions and will be presumptively at fault when she strikes a stationary object," because a moving vessel does not usually allide with a fixed structure unless it is "mishandled"). Claimants also argue that the presumption of negligence applies to the Merlo and the Seaspan Queen because both were participating in the management of the vessel when the allision occurred. *See, Woods v. U.S., Dep't of Transp.*, 681 F.2d 988, 990 (5th Cir.1982) (finding that the presumption of negligence applies to the operator of the vessel, the vessel itself, and all parties participating in the management of the vessel during the time of contact).

Seaspan, Ltd. admits that there is a presumption of negligence against the moving vessel, but argues that a finding as to the presumption of negligence is not appropriate because questions of fact exist as to whether the incident was the fault of the stationary object. *See, e.g., Carr v. Hermosa Amusement Corp.*, 137 F.2d 983, 985 (9th Cir.1943) (finding that to overcome the presumption of negligence the moving vessel must show that it was without fault, that the allision was the fault of the fixed object, or that the allision resulted from an inevitable accident). To support their argument, Seaspan, Ltd. relies on *Grace Line, Inc. v. Todd Shipyards Corp.* for the proposition that Crowley had a duty to warn Seaspan, Ltd. of the floatation tanks. 500 F.2d 361, 365 (9th Cir. 1974). In *Grace Line*, a vessel maneuvering into a drydock struck a submerged wall and the court held that the drydock owner had a duty to warn of the dangerous condition even though the vessel's pilot was aware of the wall. *Id.* at 365. *Grace Line* however, establishes only that a dock owner has a duty to warn of hidden dangers and does not propose that a failure to warn obviates the vessel's duty to act prudently. *Grace Line* is further inapposite because the evidence suggests that Seaspan, Ltd. already knew of the partially submerged floatation tanks. On the day of the allision, the ramp was stored in an upright position exposing the floatation tanks, Gravlin had docked at Pier 15½ approximately 60 times prior to the allision, and Seaspan, Ltd. regularly uses the Pier 15½ loading ramp. *Id.* (finding that no duty to warn exists when the vessel already knows of the danger). Therefore, the court finds that the allision was not the fault of the loading ramp or floatation tank, and that the presumption should apply.

█ Seaspan, Ltd. also argues that a question exists as to whether the allision was an unavoidable accident. Claimants argue that the allision was not an unavoidable accident because a proper display of precaution or skill could have prevented it. *See, e.g., The Louisiana*, 3 Wall. 164, 70 U.S. 164, 174, 18 L.Ed. 85 (1865) (finding that an action is only inevitable if it could not have been prevented by "human skill and precaution, and a proper display of nautical skill"). Seaspan, Ltd. admits that Littlejohn's "full astern" instruction was erroneous and evidence suggests that the error was due in part to Littlejohn's familiarity with a docking plan other than the one used when the allision occurred. Therefore, Seaspan, Ltd. has failed to establish that the accident could not have been prevented by proper skill and precaution, and the court finds that the allision was not an unavoidable accident.

Since the Merlo was the dominant mind during the docking procedure, and the Seaspan Queen supplied the motive power

and carried out the directional orders, the court finds that the presumption of negligence against the moving vessel applies to the Merlo and Seaspan Queen.[5]

### c. *Supervening Cause*

■ Seaspan, Ltd. argues that summary judgment is not appropriate because there are questions of fact as to supervening cause. *See, e.g., Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996) (finding that supervening cause applies in admiralty when a party's "negligence in fact substantially contributed to the plaintiff's injuries, but the injury was actually brought about by a later cause of independent origin that was not foreseeable"). Seaspan, Ltd. contends that it was unforeseeable that the ramp would capsize or that the ramp workers would return to the dock. Claimants argue that the ramp capsizing was not a cause of independent origin, but was a result of the barge striking the floatation tank. It is undisputed that the Merlo struck and pierced the floatation tank causing it to flood. Therefore, the court finds that the capsizing of the ramp was not of independent origin and that the doctrine of supervening cause does not apply to the capsizing of the ramp. However, there are issues of fact that render summary judgment on supervening cause inappropriate as to the Clovises' return to the ramp.

### 3. *Joint and Several Liability*

■ Both the Clovises and Seaspan, Ltd. agree that the rule of joint and several liability applies in admiralty. *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). Seaspan, Ltd. argues, however, that the *Edmonds* decision reaffirming the application of joint and several

liability in admiralty should be reconsidered because it is inconsistent with the maritime rule of comparative fault. Seaspan, Ltd. does not, however, cite any authority to support its proposed departure from settled law, nor does it distinguish its case from *Edmonds*. Therefore, the court will not deviate from the *Edmonds* decision which applies the rule of joint and several liability to admiralty cases.

■ Claimants suggest that joint and several liability should render Seaspan, Ltd. responsible for *all* of the Clovises' damages. However, both parties agree that pursuant to 46 U.S.C.App. § 183, when a vessel is involved in an injury-causing event, the vessel owner shall not be liable for more than the value of his interest in the vessel. The claimants have neither alleged nor proved that the rule of joint and several liability obviates the rule of limited liability set by 46 U.S.C.App. § 183.

Further, finding that joint and several liability renders Seaspan, Ltd. liable for more than the limitation fund amount is contrary to the purpose of a limitation fund. The Limited Liability Act provides that when the vessel owner is entitled to limited liability, the owner's liability "shall *in no case* exceed the value of the vessel at fault." *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 150, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957) (emphasis added). The limitation fund will not be expanded even if it is insufficient to compensate the claimants. *Id.* at 151, 77 S.Ct. 1269. Therefore, the court will apply the rule of joint and several liability, but only up to the amount in the limitation fund.

### III. CONCLUSION

For the foregoing reasons, claimants' motion to add the value of the barge Harry

---

**5.** Applying the Pennsylvania Rule or the doctrine of res ipsa loquitur would lead to the same result, i.e. application of the presumption of negligence.

A. Merlo to the limitation fund is GRANT-ED. Claimants' motion to compel joinder of Seaspan International, Inc. is GRANT-ED. Claimants' motion for partial summary judgment is DENIED. Seaspan, Ltd's motions to shorten time and supplement the record are STRICKEN as moot.