In the Matter of the Complaint of: **MOBRO MARINE, INC.** as the owner of the vessel, "Barge Mobro 605," in a cause of action of exoneration from, or limitation of, liability

In the Matter of the Complaint of: Superior Construction Company, Inc., as the owner pro hac vice of the vessel "Barge Mobro 605," in a cause of action or exoneration from, or limitation of, liability.

No. 3:02–CV–471–J–20TEM.

United States District Court,
M.D. Florida,
Jacksonville Division.

March 4, 2003.

---

**26.** As the resolution of this issue is dispositive, the court pretermits discussion of Baptist's remaining contentions.

Dwayne Lee Clark, Kristen Zedella Watson, Clark & Watson, P.A., Jacksonville, for Mobro Marine, Inc., as the owner of the vessel, "Barge Mobro 605", in a cause of action of exoneration from, or limitation of, liability In re.

Allan P. Clark, HeatherAnn Marie Solanka, Foley & Lardner, Jacksonville, for Superior Construction Company, Inc., (Consolidated in re) as the owner pro hac vice of the vessel, "Barge Mobro 605," in a cause of action of exoneration from, or limitation of, liability In re.

### ORDER

MORRIS, United States Magistrate Judge.

Plaintiffs in this matter have filed a Joint Motion to Amend the Complaint, or in the Alternative, to Increase the Limitation Fund (Doc. # 36). Claimants have filed a Response opposing the motion (Doc. # 47).[1] Oral argument was held on December 18, 2002 (Doc. # 63) and the Court has been provided copies of deposition testimony referred to at the hearing[2]

### Factual Background

On December 29, 2001 at about 7:00 p.m., a 26–foot Bayliner pleasure vessel containing an operator and seven passengers allided with the unmanned Barge Mobro 605 which was located adjacent to the Cedar Creek Bridge in Jacksonville, Florida. The complaint alleges a pusher tug, the "Mary Anne," also was moored at the location.[3] Claims for injuries suffered by persons on the pleasure vessel underlie the current limitation of liability litigation.

On January 7, 2002, counsel for some of the pleasure vessel passengers provided written notice to Mobro Marine, Inc. ("Mobro"), that the passengers would seek damages from Mobro as a result of the allision with "the unlit barge parked across the middle of the Cedar River Bridge at night." (See Doc. # 53, Claimants Motion to Dismiss, Ex. A.) Subsequently, on February 25, 2002, the same counsel provided notice to Superior Construction Co. ("Superior"), Inc., of his clients' intent to seek damages from Superior for injuries "from striking an unlit barge parked across the middle of the Cedar River Bridge at

---

1. In addition, Claimants have filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 53) and Plaintiffs have each filed a Response opposing that motion (Docs. # 54 & # 55). This Court is not resolving those issues in this Order; however, because of some common issues, exhibits attached to those pleadings have been considered by the Court.

2. Deposition of John Joseph Hall taken on December 12, 2002 (Doc. # 64), and Deposition of Richard B. Hamilton on December 9, 2002 (Doc. # 65).

3. In this limitation of liability action, Plaintiffs each filed a "verified complaint" and Complainants later filed their "complaint." For clarification purposes, all references to a "complaint" shall denote Complainants' claims and all references to a "verified complaint" shall denote Plaintiffs' claims.

night." (*See* Doc. # 23, Answer and Affirmative Defenses, Ex. B.)

On May 16, 2002, Mobro filed a Verified Complaint for Exoneration From or Limitation of Liability (Doc. # 1) indicating it was the owner of the Barge Mobro 605 and at the time of the incident the barge was under bareback charter to Superior. On June 27, 2002, Superior filed a Verified Complaint for Exoneration From or Limitation of Liability (Doc. # 1, Case No. 3:02–cv–616–J–20TEM) verifying it had chartered Barge Mobro 605 and was its owner *pro hac vice*. The two cases were consolidated by the District Court on July 18, 2002 (Doc. # 19).

Each of the actions was filed under Title 46, U.S.C. Sections 183–189. Section 185 provides:

> "The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court ...for limitation of liability within the provisions of this chapter ...."

The effect of the provision is to limit the vessel owner's liability to the value of the vessel and freight.

On August 15, 2002, a complaint (Doc. # 26) was filed on behalf of the claimants. In the complaint, Claimants state their injuries occurred when the pleasure vessel allided with the "barge and Tug flotilla" (Doc. # 26, ¶ 3). The complaint states that the suit is against Mobro and Superior as owner and charterer of three vessels, the tug "American 9299,"[4] "Barge Mobro 605" and the "Mary Anne" (defined as a 44–foot pusher tug), alleging a variety of negligent actions.[5]

Subsequent to the complaint, the instant motions were filed by Mobro and Superior seeking to add the value of the "Mary Anne" to the limitation of liability action based on the allegations contained in the August 15, 2002, pleadings. At the hearing, Mobro and Superior argued the statute provides for six months to file for limitation of liability after receiving written complaint against a vessel; that the original letters from counsel providing the required notice mentioned only the Barge Mobro 605, and that the amendment was sought within six months after Mobro and Superior first received written allegations against the "Mary Anne." Claimants argue the notice of the accident itself is sufficient to trigger investigation and begin the six month period even if the "Mary Anne" was not mentioned in the letters.

### Analysis

Under federal maritime law, Title 46, United States Code, Section 183(a), "the liability of the owner of any vessel ... for any loss, damage, or injury by collision, or for any act ... done, occasioned, or incurred, without the privity of knowledge of such owner or owners, shall not ... exceed the amount of value of the interest of such owner in such vessel, and her freight then pending."

■ What constitutes a "vessel" may vary under different aspects of maritime law, but a basic criterion is the purpose for which the vessel is constructed and the business in which it is engaged. *The Robert W. Parsons*, 191 U.S. 17, 30, 24 S.Ct. 8, 48 L.Ed. 73 (1903). In limitation of liability cases, both tugs and barges are consid-

---

4. In paragraph 14, of the Joint Motion for Leave to Amend (Doc. # 36), Mobro and Superior indicate the "American 9299" was a crane that had not been at the site of the incident for three months. They did not seek to add it to the limitation of liability.

5. Claimants' Answer and Affirmative Defenses (Docs. # 23, # 24 & # 27) were filed the same day, also alleging the "Mary Anne" and "American 9299" were involved.

ered vessels. *Sacramento Navigation Co. v. Salz,* 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663 (1927).

A frequent question in litigation is which vessel or vessels should be included within a limitation of liability fund. In *Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn Eastern District Terminal,* 251 U.S. 48, 52, 40 S.Ct. 66, 64 L.Ed. 130 (1919), the court held that the value of a flotilla need not be included in a liability fund, only the value of the "actively responsible vessel." In that case, the responsible or offending vessel was the tugboat which had a car float lashed to its port side and a disabled tug on its starboard side. The court found that even though the car float was the vessel that collided with the victim steamship, it was a "passive instrument" and does not become responsible for the harm. *Id.*

The *Liverpool* ruling created what has come to be known as the "pure tort" exception to the flotilla doctrine [6] because in contract or "affreightment" cases, the value of the entire flotilla has been applied toward the loss. In *Sacramento, supra,* 273 U.S. at 331–2, 47 S.Ct. 368, the court held that the shipper of barley did not merely contract with the barge carrying his product, but contracted for the transportation of the barley. Because the steamer pulling the barge negligently caused the barge to collide with an anchored ship, causing the barley to be lost, the value of the entire flotilla should be included in the limitation action. *See also, The Columbia,* 73 F. 226 (9th Cir.1896),

*cert. denied sub nom. Oregon R.R. & Nav. Co. v. Balfour,* 176 U.S. 685, 20 S.Ct. 1027, 44 L.Ed. 639 (1900).[7]

Plaintiffs claim that the "pure tort" exception to the flotilla doctrine applies to the instant case. Claimants do not seem to disagree with that position; however, they assert that if the tort exception does apply, Plaintiffs sought to limit liability on behalf of the wrong vessel, the barge rather than the tug. Claimants assert the amendment should not be allowed because Plaintiffs filed their limitation of liability action(s) on behalf of the wrong vessel and therefore the six month deadline for limitation of liability on the correct vessel ran prior to seeking its inclusion in the present suit.

Claimants' position seems to be that either the barge or the tug must be claimed as the offending vessel. Plaintiffs claim the evidence ultimately will show that neither are offending vessels. The Court believes another possibility based upon the allegations in the complaints is that potentially both the tug and the barge could be found to be offending vessels, not as a flotilla (assuming the tort exception applies) but based upon separate negligent acts.

Claimants' complaint alleges, among other things, that both the Barge Mobro 605 and the pusher tug Mary Anne "were carelessly and negligently moored so as to cause the allision, that the vessels were secured or moored so as to block the main navigable portion of the channel under the

---

6. "Where the injury is to a third person, to whom the shipowner owes no duty based upon consent, he may limit his liability to the ship against which a maritime lien would arise from the wrong." *Brown & Root Marine Operators, Inc., v. Zapata Off–Shore Co.,* 377 F.2d 724, 727 (5th Cir.1967).

7. Aside from contract cases, the flotilla doctrine also is applied in some master-servant

cases. *Standard Dredging Co. v. Kristiansen,* 67 F.2d 548 (2d Cir.), *cert. denied,* 290 U.S. 704, 54 S.Ct. 372, 78 L.Ed. 605 (1934); *In re Complaint of Cross State Towing Co., Inc.,* 1992 A.M.C. 1423, 1424 (M.D.Fla.1991); *Complaint of Tom Quinn, Inc.,* 806 F.Supp. 945 (M.D.Fla.1992); *In re Complaint of Weeks Marine, Inc.,* 2001 A.M.C. 574 (M.D.Fla. 2000).

bridge, that the Mary Anne was secured in such a manner as to convey she was underway, that the vessels failed to display proper lights, and the vessels failed to have sufficient crew or watchmen" (Doc. # 26).

In the letters of notice to Mobro and Superior, Claimants described their injuries as resulting from "striking the unlit barge parked across the middle of the Cedar River Bridge at night." (See Doc. # 54, Ex's. B & C). The letters also asked the companies to inventory all lights used in lighting the barge or at the site even if not in use.

Plaintiffs claim that language was not sufficient to implicate the Mary Anne; therefore, they were not on notice regarding the Mary Anne until Claimants' complaint that lists the Mary Anne was filed. They claim they should have the six months from that date to file, or amend, the limitation of liability actions.

Other courts have dealt with the six-month limitation period. Claimants argue that Complaint of Tom–Mac, Inc., 76 F.3d 678 (5th Cir.1996), is ground for denying amendment of the limitation of liability action. In Tom–Mac, a master-servant case relating to the Jones Act, the owners of a barge and tug filed a limitation action within a few months of an amended petition in a series of state court actions. The owner claimed the last amended petition first stated the plaintiff decedents were members of the tug crew and also that the barge was a vessel. The court found, however, that state court pleadings almost two years earlier had identified that two employees had been killed in the course of their employment and that a fleet of Tom–Mac's vessels were involved. Id. at 683. The court noted that Tom–Mac had pled Limitation Act defenses in the state court proceedings long before filing the federal limitation suit (Id. at 683–4).

Plaintiffs rely upon Billiot v. Dolphin Services, Inc., 225 F.3d 515 (5th Cir.2000). In Billiot, an injured employee filed a state action alleging that the incident leading to his injury occurred on a specific barge, KS–420. The charterers answered that the named barge was not chartered by the company at the time alleged and asserted limitation of liability as a defense. Subsequently, within six months from the action being filed, the company notified Billiot that the incident occurred on the KS–410. Eventually, Billiot amended his action to name the KS–410. The charterers then filed a federal limitation action. Billiot, relying on the Tom–Mac decision, claimed the action was more than six months after first notice. The court found both cases to be fact-driven, but distinguished Tom–Mac as involving only minor amendments in the petitions, as opposed to Billiot's substitution of a different vessel. The court noted that a vessel owner is entitled to rely on the written notice of the claim, even if he believes it wrong, and to hold otherwise could lead to plaintiff's manipulation, unnecessary filing of limitation actions, with accompanying encumbrances on securities. Thus, the court vacated the district court's dismissal of the limitation of liability action and remanded the case to allow the limitation of liability as timely filed. Billiot, supra, 225 F.3d at 518.

Neither case is totally on point. The instant Claimants did not misidentify a vehicle, but they omitted its mention in their written notice. They also did not identify a fleet of vehicles being involved, mentioning only the barge. The Court finds Billiot to be closer to the facts of this case, and more persuasive.

Other cases also provide some assistance. In Esta Later Charters, Inc. v. Ignacio, 875 F.2d 234 (9th Cir.1989), the court traces limitation actions from the Middle Ages to statutory enactment in the

United States in 1851. The six-month limitation period was enacted in 1936, and the opinion indicates legislative history provides no guidance as to whether a new six-month period should begin with each new claim. *Id.* at 237. The Ninth Circuit noted earlier Supreme Court cases stated the act should be administered "broadly and liberally" to achieve its purpose (*id.* at 238, n. 7), but in *Esta Later* the court indicated doubt that the merchant marine needed protection. *Id.* The issue in *Esta Later* was how soon a limitation petition must be filed in a multi-claim case resulting from a boat explosion. The court ruled the first claim triggered the six month limitation period, and that later claims or actions did not begin the period anew. *Id.* at 237. In that case, only one vessel was involved. Without disagreeing with the result, this Court is not inclined to interpret a statute according to its understanding of the well-being of an industry at the time. Further, the facts of the *Esta Later* case are distinct from the instant matter which involves two vessels.

In *In re Complaint of Morania Barge No. 190, Inc.,* 690 F.2d 32 (2d Cir.1982), the court declined to require enforcement of the six-month period to a case in which the plaintiffs for four years claimed only $366,563 in damages, an amount less than the value of the vessel, then finally claimed $2.5 million in damages. That case relied in part on a concurring opinion of Judge Learned Hand in *In re Allen N. Spooner & Sons, Inc.,* 253 F.2d 584 (2d Cir.), *appeal dismissed,* 358 U.S. 30, 79 S.Ct. 9, 3 L.Ed.2d 48 (1958). Judge Hand wrote that it appeared the time limit results in promptly alerting claimants as to whether it might be worthwhile to press their claims, but also noted that the time limits also place a burden on the owner because he must post the value of the ship. *Id.* at 586–87. "It does not seem reasonable to me to require this of him upon penalty of losing his privilege when the claimant's position is equivocal. On the other hand it is indeed reasonable to require him to make the claimant define his position." *Id.*[8]

▮ On the facts of the instant case, the Court does not believe the Claimants' initial letters provided sufficient and reasonable notice that a flotilla or a tug was involved to require that Plaintiffs should have included the value of the tug in the limitation action.[9] The letters mentioned only the mooring of a barge and its lighting. The subsequent complaint listing the tug was more than a minor amendment. Moreover, the evidence as to whether the tug Mary Anne caused the mooring of the tug may be in dispute. Deposition testimony indicates the barge at the time it traveled to the general location was attached not to the Mary Anne, but to a propelling device that was later removed. (*See* Docs. # 64, John Hall Deposition & # 65, Richard Hamilton Deposition). In

---

8. Claimants argue for a strict interpretation of the statute, without citing any case authority, purportedly because the act is a derogation of common law which abridges the rights of the claimants. However, interpreting an act strictly may be a double-edged sword. Claimants seem to want to the "written notice of claim" language, or what constitutes a claim, interpreted broadly.

9. Plaintiff Mobro and Plaintiff Superior potentially are in somewhat different positions with regard to the letter service as sufficient notice, since Superior regularly had personnel at the scene before and after the allision, whereas Mobro did not. (*See generally,* Doc. # 65, Richard Hamilton Deposition; Doc. # 64, John Hall Deposition, pp. 21, 24, 29–31, 34–5, 102, 139.) Thus, Superior was in a better position to anticipate that the barge might be implicated. Nonetheless, in *Billiot, supra,* 225 F.3d 515, the court found that even actual notice by the vessel owner did not matter where the injured party did not provide proper written notice.

such case, the barge would not be the "dumb" or passive vessel. However, the barge was connected by cables to the tug at the time of the allision, according to deposition testimony (Doc. # 65, Richard Hamilton Deposition, pp 158–9).

Only final resolution of the issues in the case will resolve cause(s) of the incident. The allegations in the complaint, as opposed to the letters, implicate both vessels.

There is precedent that more than one vessel may be implicated in a collision, even where the tort exception to the flotilla doctrine applies.

In *In re Complaint of American Commercial Lines, Inc.*, 353 F.Supp. 872 (E.D.Ky.1973), the claimants were trying to add the value of fifteen barges to the limitation fund in addition to the two tow boats which were pushing them up the Ohio River and into a collision with a pleasure cruiser. The court noted that the inquiry was the identification of the "offending vessel or vessels." *Id.* at 874. The court went on to say that a barge could be alleged to be the offending vessel, noting that navigation of barges is regulated and non-compliance with the regulations could be the cause of the harm. *Id.* at 875. Such facts were alleged in *Petition of Lake Tankers Corp.*, 132 F.Supp. 504 (S.D.N.Y.1955). There, in response to a state court action, the petitioner filed a limitation proceeding for both the tug and the barge, but stipulated only to the value of the tug and freight. The claimant filed exception, noting it had alleged in the complaint the lack of navigation lights upon the barge. *Id.* at 506. The court found that a second bond for the barge should be

posted; however, it overruled claimant's position that it should be one fund for liability purposes. "Liability is governed by the individual wrongdoing of each vessel involved and a petitioner may only be called upon to surrender such vessels as are found at fault." *Id.* at 506. The " . . . mere allegation by the claimant that the barge is at fault does not establish the fact so as to require at this time that it and the tug be considered a single vessel. Whether it was an offending vessel can only be determined after a trial of the contested issue." *Id.* at 507.

Similarly, in *Complaint of Seaspan International, Ltd.*, 172 F.Supp.2d 1314 (W.D.Wash.2001), members of the tug Seaspan Queen boarded the barge Merlo to radio information to assist in docking to a loading ramp. The court found the barge had the dominant mind because the docking procedure was commanded from the barge. *Id.* at 1318. The tug, however, retained the motive power and carried out the directional orders, thus the court ordered the value of both vessels in the liability fund. *Id.* at 1321–22. *See also Dow Chemical Co. v. Tug Thomas Allen*, 349 F.Supp. 1354 (E.D.La.1972) (barge was dominant in giving directions, tug negligent in following barge's orders).

Because the language in Complainants' complaint appears to allege both separate and joint negligent acts by the Barge Mobro and the tug Mary Anne,[10] either vessel or both could be found to be negligent (or not negligent) in causation of the allision. Under those circumstances, the Court believes *Lake Tankers, supra*, 132 F.Supp. at 506–7, is persuasive and a separate limita-

---

10. For example, Claimants' allegation that "both vessels were moored so as to block the main portion of the channel and passage under the bridge. . ." might be construed to imply the vessels were joined together blocking the channel as a single unit (Doc. # 26, ¶ 11(d)). The allegation the vessels were "carelessly and negligently moored so as to cause an allision between the two vessels" might be interpreted to indicate the vessels were separately moored with more than one negligent act involved in the moorage (Doc. # 26, ¶ 9).

tion fund should be established for the tugboat Mary Anne.

In summary, the Court finds the original letters to Mobro and Superior were not sufficient notice as to the tug Mary Anne, and amendment of the limitation of liability actions should be allowed. Further, the Court finds that matters likely to be in dispute in the case will include whether the Mary Anne was negligent in the placement and mooring of the Barge Mobro 605, whether her crew was responsible for the lighting of the vessels, and whether the lighting on the vessels met Coast Guard regulations. Under those conditions, each vessel has potential liability.

The Court will allow amendment of the verified complaint, but rather than allow an increase in the limitation fund, a separate fund should be established for the Mary Anne. Thus, the Joint Motion to Amend the Complaint, or in the Alternative, to Increase the Limitation Fund (Doc. # 36) is **GRANTED in part**, as set forth above.